701 A.2d 1330

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellee,

v.

UNIVERSAL UNDERWRITERS INSURANCE
COMPANY, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided Sept. 9, 1997.

---

Robert E. Dapper, Jr., Robert J. Colville, Pittsburgh, and Glenn A. Ricketti, for Universal Underwriters.

Louis E. Bricklin, Michael Saltzburg, Erin M. Donaldson, Philadelphia, and Susan B. Caravaggio, Williamsport, for State Farm Mutual Auto Ins. Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is an appeal by allowance from the order of the Superior Court, vacating the order of the Court of Common Pleas of Lycoming County which granted in part and denied in part the summary judgment motion of State Farm Mutual Automobile Insurance Company ("State Farm"). This matter involves the interpretation of two automobile insurance policies, one issued by State Farm on the driver of the vehicle involved in the accident at question and the other issued by Universal Underwriters Insurance Company ("Universal") on the owner of the vehicle. Because we determine that the policy issued by Universal does not provide coverage for the driver of the automobile in question, we reverse the order of the Superior Court.

In October of 1988, Kinley's Subaru, Inc. ("Kinley's Subaru") loaned a car to a customer, Dottie Hill ("Hill"), for her to use while her car was being repaired. While driving this car, Hill collided with a car driven by Leo Lorson ("Lorson"). The collision damaged Lorson's car and injured a passenger in his car.

At the time of the accident, Kinley's Subaru had a policy of insurance issued by Universal. Hill was insured under a policy issued by State Farm.

State Farm defended Hill against the claims brought by Lorson and his passenger. These claims were settled for $17,300. State Farm then brought a declaratory judgment action against Universal to obtain compensation for part of the cost of the defense and settlement of the claims. Following discovery, both parties filed motions for summary judgment. Universal contended that Hill was not covered by its policy and therefore it had no duty to compensate State Farm for the costs of defending and settling the claims. State Farm asserted that as a matter of law, Universal had a duty to defend and

indemnify Hill and that State Farm was entitled to judgment against Universal for 10/11ths of the total costs of defending and settling the claims.[1]

The trial court partially granted State Farm's motion for summary judgment. First, it found that the Universal policy did cover Hill. The trial court also determined that a clause in the Universal policy which attempted to limit its coverage amounted to an unenforceable escape clause. The trial court, however, rejected State Farm's position on allocation of liability, and apportioned liability between State Farm and Universal equally rather than pro rata according to policy limits.

Both parties appealed to the Superior Court. The Superior Court agreed with the trial court that the Universal policy covered Hill and that the clause in the policy which attempted to limit liability amounted to an unenforceable escape clause. The Superior Court disagreed, however, with the trial court's apportionment of liability. It found that rather than apportioning liability equally, the proper method to apply was the "policy limits" method and thus held Universal liable for 10/11ths of the total costs of defending and settling the claims.

Universal filed a Petition for Allowance of Appeal with this court and we granted allocatur.

 In examining this matter, as with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 144–145, 615 A.2d 303, 304

---

1. State Farm arrived at the 10/11ths figure by employing what is commonly referred to as the "policy limits method". This approach allocates the loss by prorating coverage according to the ratio of the coverage provided by each policy for the same loss to the total coverage provided by all policies. *See generally Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 657 A.2d 1274 (1995). In this matter, the total coverage provided by all policies is $550,000.00; that amount is arrived at by adding the $50,000.00 coverage provided by the State Farm policy to the $500,000.00 liability limit in Universal's policy. Therefore, by employing the policy limits method, State Farm would be liable for 1/11ths ($50,000.00/$550,000.00) of the loss whereas Universal would be liable for 10/11ths ($500,000.00/$555,000.00).

(1992). Summary judgment will be granted only in those cases which are free and clear from doubt. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). Our scope of review is plenary. *See Phillips v. A–Best Products Co.,* 542 Pa. 124, 129–131, 665 A.2d 1167, 1170 (1995).

 The first issue we must examine is whether the lower courts were correct in determining that Hill was covered under the Universal policy. Interpretation of an insurance policy is a question of law, subject to plenary review by this court. *See Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234 (1994).

We begin our analysis by examining the relevant portions of the contract. In the "Garage" section of the policy, Universal states that

WE will pay all sums the INSURED legally must pay as damages . . . because of an INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

. . . .

"AUTO HAZARD" means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:

(1) used for the purpose of GARAGE OPERATIONS or

(2) used principally in GARAGE OPERATIONS with occasional use for business or non-business purposes or

(3) furnished for the use of any person or organization.

R.R. at 61a. The policy also defined "who is insured" with respect to an "auto hazard" as

1. YOU;

2. Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;

3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

R.R. at 62a.

The parties agree that Hill would be considered an insured only if she fit within the third definition of "who is an insured". Universal argues that Hill is not encompassed within this definition as she was not a person "required by law to be an INSURED" and therefore its policy does not cover her. We agree.

In examining whether Hill was "required by law to be an INSURED," we turn to the Motor Vehicle Financial Responsibility Law ("MVFRL") as it existed in 1988 when the accident occurred.[2] First, it is beyond peradventure that Hill is not an "insured" as defined by § 1702.[3] Furthermore, unlike the automobile insurance laws of several of our sister states, the 1988 MVFRL did not contain a clause which required that all permissive users of a vehicle be insureds under the vehicle owner's policy of insurance.[4] Although we find that the 1988 MVFRL did not contain an explicit dictate that permissive users who have their own automobile insurance, such as Hill, be covered under the vehicle owner's policy, that determina-

---

**2.** We note that the MVFRL underwent substantial amendments in 1990. These 1990 amendments are not applicable to this matter, however, as the accident in question predated their promulgation. We specifically caution the lower courts and the practicing Bar that this opinion is not meant to be controlling precedent in interpretation of the provisions of the post–1990 MVFRL.

**3.** Section 1702 defines three classes of insureds:
> (1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.
> (2) If residing in the household of the named insured:
>> (i) a spouse or other relative of the named insured; or
>> (ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S. § 1702.

**4.** For examples of such statutes, *see,* Ala.Code § 32–7–22; Cal. Veh. Code § 16451; Kan. Stat. Ann. § 40–3107(b); Mich. Stat. Ann. § 9.2220; Mo.Rev.Stat. § 303.190.2(2); Ohio Rev.Code. Ann. § 4509.51(B); S.C.Code Ann. § 38–77–30(6); Va.Code. Ann. § 38.2–2204; W.Va.Code § 17D–4–12(b)(2).

tion alone does not resolve this issue. We must now proceed to analyze whether such a requirement could be implied from the 1988 version of the MVFRL.

State Farm argues that the entire scheme of subchapter H of the MVFRL, 75 Pa.C.S. §§ 1781–1787, supports its position that the vehicle owner was required by law to provide financial responsibility for permissive and otherwise insured users of the vehicle.[5]

The provision on which State Farm places most of its emphasis is § 1786. The 1988 version of that statute stated that each motor vehicle registrant shall certify that he has provided "financial responsibility" at the time he registers his vehicle. 75 Pa.C.S. § 1786. "Financial responsibility" was defined as the ability to respond in damages in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident. 75 Pa.C.S. § 1702. Essentially, State Farm's argument is that in order for the owner to be in compliance with § 1786, all permissive users would have to be insureds under the owner's policy.

There is some authority to support the argument that where a permissive user is otherwise not covered by financial responsibility, then the vehicle owner must provide coverage in order to meet the requirement of § 1786 that the vehicle be covered by "financial responsibility".[6] Yet, that is not the situation

5. In support of this argument, State Farm relies on the post–1990 version of these statutes. As noted above, the post–1990 version of these statutes has no application to this matter. Therefore, those portions of State Farm's argument that touch on sections of the MVFRL which were either created or substantially altered by the 1990 amendments will not be discussed in this opinion.

6. We note that at least one appellate court has adopted the position that where a permissive user is otherwise *not* covered by financial responsibility, then the vehicle owner is "required by law" to provide coverage in order to meet the requirement to provide financial responsibility. *See Steinberg v. Universal Underwriters Ins. Co.*, 272 Ill.App.3d 79, 208 Ill.Dec. 743, 650 N.E.2d 14 (1995). (*But see Universal Underwriters Insurance Group v. Griffin*, 287 Ill.App.3d 61, 222 Ill.Dec. 522, 677

with which we are confronted in this matter. Here, Hill was covered by financial responsibility due to her own auto insurance policy. In order to hold that the 1988 version of § 1786 mandated that Hill be covered in this instance, we would have to find that the statute directed an owner to provide the minimal level of coverage set forth in § 1702 even where the permissive user is already covered by financial responsibility under her own policy. In essence, we would have to state that § 1786 mandated the owner to provide redundant coverage.

We reject this approach. Section 1786 required that the owner's vehicle be covered by financial responsibility but is utterly silent as to whom the coverage of the owner's policy runs. We find it fantastic to conclude that from this silence would spring a mandate that permissive, otherwise insured drivers such as Hill would be required by law to be insured under the owner's policy.

State Farm's remaining arguments concerning Subchapter H are also unconvincing. For example, State Farm argues that 75 Pa.C.S. §§ 1784 and 1785 established that Hill should be covered under the Universal policy. We disagree. Those statutes provided that where a vehicle which was not covered by financial responsibility was involved in an accident, then the automobile's registration [7] and the owner's license [8] would be suspended. We do not see how statutes which supply penalties for failure to provide financial responsibility dictate that a driver such as Hill, who has evidenced financial responsibility through her own policy, is entitled to redundant coverage.

N.E.2d 1321 (1997) (criticizing the holding in *Steinberg*).) In that case, the court was also confronted with determining whether a permissive user of an automobile is "required by law" to be covered under the vehicle owner's insurance policy. In analyzing an Illinois statute which is strikingly similar to § 1786 of the 1988 MVFRL, the Appellate Court of Illinois determined that although an otherwise insured permissive user is not "required by law" to be covered under the owner's insurance policy, an owner would be "required by law" to cover a permissive user who did not provide her own financial responsibility. *Id.*

7. 75 Pa.C.S. § 1784.

8. 75 Pa.C.S. § 1785.

Finally, we note that much of State Farm's argument is premised upon the position that public policy would be served by requiring that a vehicle owner's insurance policy encompass a permissive user as an insured. Yet, the role of the court in this matter is not to make policy determinations as to whether permissive drivers who are covered by their own auto insurance *ought* to be insureds under the owner's insurance policy; rather, our function is simply to determine whether the Legislature did indeed place such a requirement in the 1988 MVFRL. Reworking the dictates of the MVFRL in order to achieve some ostensibly laudable public policy goal would be a gross intrusion on the Legislature's constitutional powers. Therefore, we decline to alter the meaning of the 1988 MVFRL in order to achieve some policy goal.

██ We thus conclude that Hill was not "required by law" to be an insured under the Universal policy.[9] Because we have determined that the lower courts erred in holding that Hill was covered by the Universal policy, we need not consider the remaining issues of whether the Universal policy contained an unenforceable escape clause or whether prorating coverage by the "policy limits" method was appropriate. For the foregoing reasons, we now reverse the order of the Superior Court and remand the matter for summary judgment to be entered in favor of Universal. Jurisdiction is relinquished.

---

**9.** We also note that the Superior Court found that the language "required by law to be an INSURED" was ambiguous and therefore construed it against Universal as the drafter in favor of finding coverage for Hill.

We reject this conclusion as we find nothing ambiguous about the clause that the insurance contract would extend coverage to a driver as required by law. The language itself could not be plainer. Furthermore, as discussed above, there is no support in the 1988 version of the MVFRL for the position that a vehicle owner's policy was required to insure a permissive user who had her own automobile insurance providing financial responsibility. Therefore, we find that it is clear that Hill was not "required by law" to be an insured under the Universal policy.