**Sprankle v. Brown**

C.P. of Indiana County, no. 10619 CD 1996.

*Thomas Kauffman,* for plaintiff.
*Dennis J. Stofko,* for defendants.

MARTIN, *P.J.,* June 16, 1999—This matter comes before the court for resolution of defendants' motion for summary judgment. For the reasons discussed herein, the motion is granted.

## FACTS

On April 4, 1996, Kathleen Sprankle instituted this action against James Brown and Marilyn Brown. This suit arose out of a motor vehicle accident which occurred on April 19, 1994.

Plaintiff claims that as a result of the accident she suffered the following injuries:

"(a) Fractured rib;

"(b) Cervical sprain/strain;

"(c) Whiplash;

"(d) Lumbar sprain/strain;

"(e) Thoracic sprain/strain;

"(f) Neck sprain/strain;

"(g) Weakness of upper extremities;

"(h) Chronic fatigue;

"(i) Neck and back pain;

"(j) Stiffness of upper back and neck;

"(k) Minor facial pain, shoulder and neck;

"(l) Chronic pain;

"(m) Swelling of the back and neck;

"(n) Discomfort in back/neck;

"(o) Decreased/restricted ability to concentrate;

"(p) Severe headaches; and

"(q) Blurred vision." (Pl.'s brief in opposition, p. 3.)

Following the accident, plaintiff underwent physical therapy three times per week for seven to eight months and is under prescription for pain medication for an indefinite period of time. Also, plaintiff asserts that the severe neck pain she suffered caused an inability to concentrate and/or read and as a result, she was forced to request an extension of time to complete her correspondence course to obtain a diploma as a medical/dental assistant. (Pl.'s brief in opposition, p. 3.) She has since completed the course and received her diploma, but she had to postpone the course for 16 months due to her injuries. Plaintiff is still unable to read or concentrate for more than half an hour at a time. Additionally, plaintiff alleges that she is no longer able to do any heavy lifting, perform certain household tasks or take long walks. (Pl.'s brief in opposition, p. 3.)

Defendants argue that plaintiff has recovered from all the injuries that were a result of the motor vehicle accident. She now only has subjective complaints of continued pain and plaintiff's own treating physician has indicated that plaintiff has been suffering from a chronic

discomfort in her back and neck due to a preexisting condition.

Defendants are presently moving for summary judgment and argue that plaintiff has not suffered a "serious injury" which would permit her to recover noneconomic damages pursuant to 75 Pa.C.S. §1705 because plaintiff elected the "limited tort" insurance option.

## APPLICABLE LEGAL STANDARD

Summary judgment is appropriate only where it is clear and free from doubt that "the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Richman v. Mosites,* 704 A.2d 655, 657 (Pa. Super. 1997) (citing *Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159 (1997)).

When determining whether summary judgment is proper the court "must view the record in the light most favorable to the non-moving party, and all doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." *State Farm Automobile Insurance Co. v. Universal Underwriters Insurance Co.,* 549 Pa. 518, 521, 701 A.2d 1330, 1331 (1997). The moving party has the burden of proving that no genuine issue of material fact exists. *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 684 A.2d 137 (1996). Finally, because summary judgment will bring an end to a cause of action, it is appropriate in only the clearest of cases. *Leonelli v. McMullen,* 700 A.2d 525 (Pa. Super 1997).

## DISCUSSION

Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., requires automobile insurers to offer both limited tort and full tort options to its customers. The limited tort option, 75 Pa.C.S. §1705(d), provides as follows:

"Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as a consequence of the fault of another person pursuant to applicable tort law. *Unless the injury sustained is a serious injury,* each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss. . . ." (emphasis added)

75 Pa.C.S. §1702 defines "serious injury" as a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement. The limited tort option allows insurers to offer coverage at reduced premium rates in exchange for the insured waiving his or her right to sue for noneconomic damages, such as pain and suffering, *unless* he or she suffers a "serious injury" in an automobile accident. *Dodson v. Elvey,* 445 Pa. Super. 479, 484, 665 A.2d 1223, 1226 (1995), *rev'd,* 554 Pa. 245, 720 A.2d 1050 (1998).

Until recently, the leading case on this issue was *Dodson, supra,* where the Superior Court of Pennsylvania held that the trial judge must make the threshold determination of whether there has been a "serious injury" in all cases where the parties agree on the objective evidence relating to the nature and extent of the injuries suffered by the plaintiff. *Id.*

However, recently the Supreme Court of Pennsylvania rejected the reasoning of *Dodson* in *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998), and held that in order to stay true to the legislative intent in creating the limited tort statute, the traditional summary judgment standard is to be followed. Thus, the threshold determination is not to be made routinely by a trial court judge in determining if the injury is "serious," but rather the decision is to be left to a jury *unless* reasonable minds could not differ on the issue of whether a serious injury has been sustained.

The Supreme Court of Pennsylvania went on to hold as follows:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment, . . . the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." *Washington,* 553 Pa. at 447-48, 719 A.2d at 740, citing *DiFranco v. Pickard,* 427 Mich. 32, 39-40, 398 N.W.2d 896, 900 (1986).

The court applied this test in *Washington* and found that appellant's right foot was impaired as the result of the motor vehicle accident in question. However, they

did not find that this impairment was "serious." Appellant was immediately treated in a hospital and discharged within a few hours. He missed four or five days of work at his full-time job, and missed approximately four of his weekly shifts at his part-time job. Treatment for his injuries was not extensive and although some type of arthritis or coalition continued to affect one of the joints in appellant's right foot, it seemed to have had little or no impact on his performance at work or on his personal activities. *Id.* Although appellant had pain in his ankle approximately every other week, he was still able to perform his work duties and, aside from having to use a riding lawn mower instead of a manual mower, he engaged in normal daily activities. The court therefore found that reasonable minds could not differ on the determination that this impairment did not meet the serious injury threshold and they affirmed the grant of summary judgment in favor of appellees. *Id.*

Recently in *Furman v. Shapiro,* 721 A.2d 1125 (Pa. Super. 1998), the court applied the test as set out in *Washington* to determine if a genuine issue of material fact existed regarding the appellant's injuries meeting the definition of serious impairment of a bodily function. Appellant was diagnosed with several back conditions, including a bulging disc, which prevented her from walking more than a block at a time, lifting heavy objects, and bathing her daughter. Appellant did continue to drive, perform household chores and work as a manicurist. However, she reduced her work hours from full-time to part-time because of her inability to remain in one position for an extended period of time. *Id.* at 1127.

Notably, appellant's physician in *Furman* described her condition as permanent and her problems persisted at the time of her deposition taken over three years past the day of the accident. The Superior Court found that these injuries were sufficient to determine that reasonable minds could differ as to whether appellant suffered a "serious injury" for purposes of 75 Pa.C.S. §1702 and reversed the lower court's grant of summary judgment in favor of appellees. *Id.*

In applying the same test to the facts of the case sub judice, this court must look at the facts in the light most favorable to the non-moving party and accept as true all well-pleaded facts. *Banker v. Valley Forge Insurance Co.,* 401 Pa. Super. 367, 373, 585 A.2d 504, 507 (1992).

Initially, it is noted that plaintiff admitted to having fully recovered from the fractured rib, whiplash and swelling of her back and/or neck. (Defendant's exhibit A.) Plaintiff claims that all other injuries, as set out above, are permanent.

The first question the court must address under the *Washington* test is what body function(s), if any, was impaired because of injuries sustained in a motor vehicle accident.[1] Plaintiff alleges that her injuries have left her unable to read or concentrate for more than half an hour at a time and that this led to her 16 month postponement of obtaining her diploma as a medical/dental assistant. Plaintiff also alleges that she is unable to do

---

1. Plaintiff's injuries did not cause death. Nor does she allege permanent serious disfigurement. Thus, the only question for the court, under the definition of a "serious injury" set out at 75 Pa.C.S. §1702, is whether plaintiff suffered a serious impairment of body function.

any heavy lifting, perform certain household tasks or participate in some activities she once did, such as walking.

The next question under *Washington* is whether the impairment of the body functions was serious. As noted above, to determine if the injury was "serious," the court must consider the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. *Washington,* 553 Pa. at 447-48, 719 A.2d at 740. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment although the injury need not be permanent to be serious. *Id.*

Accordingly, a review of the medical testimony revealed that plaintiff's treating physician following the accident was Paul D. Burton D.O. In a letter to plaintiff's counsel dated September 15, 1995, Dr. Burton stated the following:

"In summary, I do feel that this patient [plaintiff] sustained a cervical, thoracic, and lumbar strain and has had residual chronic pain which did appear to be a result from her motor vehicle accident on April 19, 1994. It is noted, however, that she has a history of underlying mild degenerative disc disease and spondylolysis in the low back, bursitis in the right hip, and has been diagnosed with 'fibromyalgia.' This may also be somewhat of a contributing factor. She may always have some discomfort in her back and neck areas from the preexisting problem with fibromyalgia. *It becomes very difficult at times to separate a patient who has had a preexisting problem*

*with an injury and how that is related. I do feel that all of her care with me was appropriate and necessary. With respect to further problems I think that a cervical and lumbar and thoracic strain should have resolved in the time frame that I had seen her. That is why I sent her to Dr. Speez for her physiatry care. I do not feel that she will have any significant increased problem from the motor vehicle accident itself in the future. "* (Defendants' exhibit C.) (emphasis added)

Furthermore, in a more recent letter to plaintiff's counsel dated April 25, 1997, Dr. Burton reiterated his opinion as follows:

"It is my medical opinion that she [plaintiff] did sustain a cervical, thoracic, and lumbar strain from the motor vehicle accident of 19 April 1994. There are patients who have this type of injury who do have chronic pain. However, she had preexisting pain, and the extent that it was aggravated by the motor vehicle accident will be very difficult to ascertain. I think she will always have some chronic cervical, thoracic and lumbar pain and it may be impossible to relate that the motor vehicle accident triggered all of her symptoms. It may be that the motor vehicle accident was at least contributory to some of her chronic pain." (Plaintiff's exhibit A.)

Additionally, plaintiff's deposition testimony, taken on November 12, 1998, revealed that during the course of a day she typically does housework, laundry and grocery shopping for her family. She can no longer use a tractor to mow the six acres of lawn plaintiff and her husband own and she is unable to do any heavy lifting. However, plaintiff has no specific restrictions as to what amount she can lift and/or move.

Thus, considering plaintiff's own testimony that she is able to perform most of her daily activities without complication, in conjunction with her treating physician's remarks that plaintiff's subjective complaints may all be due to a preexisting condition and that "it may be impossible to relate that the motor vehicle accident triggered all of her symptoms," (plaintiff's exhibit A), reasonable minds could not differ in the conclusion that plaintiff did not suffer a serious impairment of body function. There is no medical testimony to support a finding of a serious injury.

The court finds the case sub judice to be analogous with the facts of *Washington, supra,* where although the appellant had introduced evidence of some injury, including arthritis or coalition in his foot, the impact on him from the injury did not rise to the level of a "serious impairment of a body function." Following his injury, appellant was able to perform his job functions and engage in personal activities, albeit he is no longer able to use a manual lawn mower. Thus, the Supreme Court of Pennsylvania affirmed summary judgment for appellees.

Similarly, in the instant matter, plaintiff's injuries are not preventing her from performing her normal daily activities. She incurred some physical therapy and was prescribed pain medications. However, plaintiff did not undergo extensive medical treatment for her injuries. Furthermore, Dr. Burton's treatment of plaintiff lasted approximately 14 months. At the end of the treatment, Dr. Burton related his medical opinion that her cervical, lumbar and thoracic strains should have resolved by then and that it was very difficult to separate her preexisting

problems from possible injuries due to this motor vehicle accident. Thus, even viewing the fact in the light most favorable to the plaintiff, reasonable minds could not differ in the conclusion that she did not suffer a "serious injury" under the definition in 75 Pa.C.S. §1702 and described more fully in *Washington v. Baxter.*

Wherefore, the court makes the following order.

## ORDER

And now, June 16, 1999, after careful consideration of defendants' motion for summary judgment, and following argument on the matter, it is hereby ordered and directed that motion is granted and plaintiff is precluded from recovering noneconomic losses from defendants in this matter.