# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01685-SCT

*STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY*

*v.*

*UNIVERSAL UNDERWRITERS INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/10/1999 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PETER C. ABIDE |
| | JAMES N. COMPTON |
| ATTORNEY FOR APPELLEE: | SUSAN LATHAM STEFFEY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 10/11/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/1/2001 |

**BEFORE BANKS, P.J., SMITH AND MILLS, JJ.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This liability insurance coverage dispute between two insurers presents the issue of whether a car dealership's garage keeper policy provides primary coverage for a permissive user despite the fact that the policy on its face does not extend coverage beyond certain designated operators and anyone else "required by law to be an insured." Because we conclude that the language in the policy clearly and unambiguously limits policy coverage and the Motor Vehicle Safety-Responsibility Law does not mandate coverage, we affirm the judgment of the trial court finding no coverage.

## I.

¶2. In November 1996, Turan-Foley Chevrolet-Buick-Geo, Inc. ("Turan-Foley") loaned a vehicle to Carl Fitzgerald ("Fitzgerald") while Fitzgerald's vehicle was being repaired at the car dealership. Fitzgerald hit another car while returning to the dealership. The injured party submitted a claim against Fitzgerald for property damage and personal injuries. At the time of the accident, Fitzgerald was insured under an automobile policy with State Farm Mutual Automobile Insurance Company (State Farm). Universal Underwriters Insurance Company (Universal) insured Turan-Foley. State Farm settled the claim with the injured party. Universal denied coverage to Fitzgerald asserting that he was not insured under Universal's policy with Turan-Foley.

¶3. State Farm filed a motion for declaratory judgment against Universal alleging that Universal had a primary duty to defend Fitzgerald. Universal moved for summary judgment contending as a matter of law, the Universal Policy excluded Fitzgerald from coverage. In turn, State Farm filed a cross-motion for summary judgment arguing that the relief sought in its declaratory judgment action should be granted. In September 1999, the Circuit Court Judge granted the summary judgment motion of Universal. State Farm

appeals to this Court for relief from this judgment.

## II.

¶4. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56. On appeal, this Court reviews an order granting summary judgment de novo. *Mosby v. Moore*, 716 So. 2d 551, 557 (Miss. 1998).

### a.

¶5. The section of the Universal policy at issue is Unicover Coverage, Part 500 which is titled "Garage Operations and Auto Hazard." The provisions relevant to the facts of this case provide:

> WE will pay all sums the Insured legally must pay as DAMAGES . . . because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS and AUTO HAZARDS
>
> * * *
>
> AUTO HAZARD" means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:
>
> (1) used for the purpose of GARAGE OPERATIONS;
>
> (2) used principally in GARAGE OPERATIONS with occasional use for other business or nonbusiness purposes;
>
> (3) furnished for the use of any person or organization.
>
> * * *
>
> WHO IS AN INSURED -
>
> * * *
>
> With respect to the AUTO HAZARD:
>
> (1) YOU;
>
> (2) Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;
>
> (3) any CONTRACT DRIVER:
>
> (4) Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of your PERMISSION.

¶6. It is well-established law in Mississippi that a liability insurance policy covering the vehicle involved in an accident provides primary coverage. ***Travelers Indem. Co. v. Chappell***, 246 So.2d 498, 505-06 (Miss. 1971). *Accord*, ***State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.***, 601 F. Supp. 286, 289-90 (S.D. Miss. 1984); ***Garriga v. Nationwide Mut. Ins. Co.***, 813 F. Supp. 457 (S.D. Miss. 1993). Because it is undisputed that Turan-Foley was the owner of the vehicle involved in the accident and Universal insures Turan-Foley it follows, State Farm posits, that Universal is the primary carrier.

¶7. This argument is without merit. State Farm cites to ***Travelers*** for the proposition that the insurer of the vehicle involved in the accident is the primary carrier. In ***Travelers***, this Court established that: "[T]he rule is: the policy of the owner of the vehicle involved in the accident is *ordinarily* considered to be the 'primary policy.'" ***Travelers***, 246 So.2d at 505 (emphasis added). The policy in ***Travelers*** and, thus, the stated rule, is distinguishable from the instant case.

¶8. In ***Travelers***, while the underlying plaintiff's car was being repaired, the service center loaned her a car. ***Travelers***, 246 So.2d at 499. She collided with another car while driving the loaner vehicle. ***Id.*** The underlying defendant served State Farm, the underlying plaintiff's carrier, and Travelers, the insurer of the service center. ***Id.*** Each policy contained an "escape" clause relieving it of liability in the event the insured had "other insurance" covering the liability.[(1)] ***Id.*** at 500. The trial court entered a judgment prorating the liability of each insurer and all the parties appealed. ***Id.*** The parties appealed to this Court. ***Id.***

¶9. The ***Travelers*** Court recognized the difficulty in reconciling an insurer's "liability but for other insurance" clauses in automobile policies when both policies contained escape and excess clauses. ***Id.*** at 504. It began by holding that the escape clauses found in the two policies were "repugnant and nugatory" and concluded that the two excess clauses were not applicable. ***Id.*** Because the Court eliminated the excess and escape policies, it proceeded by considering the remaining apportionment clauses in each policy. ***Id.*** at 505. The Court concluded that both of the policies were liable and determined that the owner of the vehicle involved in the accident had the primary policy and the customer had the excess policy. ***Id.*** at 505. ***Travelers*** also noted that this Court had previously held that the garage policy was the primary policy in a similar case dealing with excess v. escape clauses. ***Id.*** (citing ***International Serv. Ins. Co. v. Ballard***, 216 So.2d 535 (Miss. 1968)).

¶10. In the instant case, the question presented does not involve the question of coverage with two policies containing an escape clause or an excess clause. Nor does either insurer contend that it has no liability or limited liability due to an escape clause or an excess coverage clause. To the contrary, this case presents only a question of whether the Universal policy is available at all to this permissive user.

¶11. The policy language in Part 500 does not provide coverage for an individual using the car under these circumstances. The policy language explicitly provides for who is an insured - Turan-Foley, partners of Turan-Foley, paid employees of Turan-Foley, directors and stockholders of Turan-Foley, any member of their household and any contract driver, or any person required by law to be an insured.

**b.**

¶12. State Farm argues that because this policy does not contain clear, specific language indicating that permissive users are excluded from liability coverage, then the policy is ambiguous. Further, if there is any ambiguity in the contractual language, State Farm notes, such ambiguity is to be resolved in favor of the insured. ***Nationwide Mut. Ins. Co. vs. Garriga***, 636 So.2d 658, 662 (Miss. 1994); ***Caldwell v.***

*Hartford Acc. & Indem. Co.*, 248 Miss. 767-777, 160 So.2d 209, 213 (1964).

¶13. In *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 701 A.2d 1330 (Pa. 1997), the Pennsylvania Supreme Court dealt with a factually similar case. The dealership loaned a car to a customer while her car was being repaired. *Id.* at 1331. The dealership was insured by Universal and the customer was insured by State Farm. *Id.* While driving the car, the customer was involved in a collision causing damage and injury to another vehicle; State Farm settled with the injured party. *Id.* State Farm brought a declaratory action against Universal and subsequently filed a motion for summary judgment. *Id.* The trial court partially granted State Farm's motion for summary judgment and apportioned liability between State Farm and Universal. *Id.* Both parties appealed to the Superior Court which affirmed the partial summary judgment, but reapportioned Universal's and State Farm's liability holding Universal primarily responsible for the liability. *Id.* Universal appealed to the Pennsylvania Supreme Court. *Id.*

¶14. That Supreme Court first addressed whether the customer was covered under Universal's policy. *Id.* at 1331. After examining the garage keepers policy language, which is exactly the same language presented in the instant case, the Court concluded that the customer was not "required by law" to be an insured under the Universal Policy. *Id.* The Court in making this determination examined Pennsylvania's Motor Vehicle Financial Responsibility Law and found that the language of the statute did not contain a provision which required that all permissive users of a vehicle be insured under the vehicle owner's policy of insurance. *Id.* The Court further explained that in order to resolve this issue it had to analyze whether such a requirement could be inferred from the statute. *Id.* The Court reasoned that reading the statute to require the vehicle owner to provide coverage for a permissive user where the permissive user has financial responsibility coverage under her own policy would result in redundant coverage. *Id.* at 1332. Thus, the Court concluded that the customer was not "required by law" to be an insured under the Universal policy. *Id.* at 1333.

¶15. We conclude that the policy language in this case is clear and unambiguous. UNICOVER Coverage Part 500 defines "Auto Hazard" as the ownership, maintenance, or use of any auto owned by or in the care of Turan- Foley and is used for 1) garage operations; 2) principally in garage operations with occasional use for other business or non-business purposes or furnished for the use of any person or organization. It also defines "who is an insured" as: 1) you; 2) any of your partners, paid employees, directors, stockholders, executive officers, a member of your household, while using an auto covered by this coverage part, or when legally responsible for its use; 3) a contract driver; 4) or any other person or organization required by law to be an insured while using an auto covered by this coverage part within the scope of your permission. This Court has stated:

> It is clear that the relationship between an insurance company and its insured is contractual in nature, with the rights and duties set out by the provisions of the insurance policy. Like all other contracts, insurance policies which are clear and unambiguous are to be enforced according to their terms as written. Thus, the plain terms of the insurance contract should be binding and controlling.

*Hare v. State*, 733 So.2d 277, 281 (Miss. 1999). Because the language in the policy is not ambiguous and does not appear to be open to two interpretations, the plain meaning of the contract should be binding and controlling.

¶16. Moreover, we find that the language "required by law to be covered" is also not so vague as to render the policy ambiguous. *See Universal Underwriters Ins. Co. v. Weber*, 701 S.W.2d 588, 590 (Mo. Ct. App. 1985)("Any other person or organization required by law to be an insured" is not an ambiguous

phrase); ***State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.***, 701 A.2d at 1333 (holding that provision of garage owner's liability insurance policy defining "insured" to include any person required by law to be an insured while using auto is unambiguous); ***Pribble v. State Farm Mut. Auto. Ins. Co***., 933 P.2d 1108, 1111-13 (Wyo. 1997)(household exclusion in policy which refers to "the limits of liability required by law" is not vague or indefinite). It follows that unless it can be said that this permissive user is a person "required by law to be an insured" he is not covered.

## c.

¶17. State Farm maintains that Universal's policy does not specifically refer to what "law" they are referring to in the policy in the portion of the policy which discusses who is an insured. Therefore, the "law," State Farm postulates, must be in reference to the Mississippi Motor Vehicle Safety Responsibility Law, Miss. Code Ann. §§ 63-15-1 to -75 (1996 & Supp. 2000), which sets forth the minimum requirements for an insurance policy. Specifically, State Farm points out that the language of § 63-15-43(2) provides that a motor vehicle liability policy "shall pay on behalf of the named insured and any other person as insured, using any such motor vehicles with the express or implied permission of such named insured." If Universal is deemed to be in accordance with the minimum requirements for an owner's liability, State Farm contends that there would be coverage under ***State Farm Mut. Auto Ins. Co. v. Mettetal,*** 534 So.2d 189, 192 (Miss. 1988).

¶18. State Farm urges that ***Mettetal*** created a "first bite" rule which required an owner to furnish proof of financial responsibility if there was no coverage for an owner or operator after an automobile accident. State Farm alleges that Turan-Foley has been involved in numerous accidents while covered under Universal's policy. Nevertheless, neither Turan-Foley, nor Universal has been required to certify or has certified the insurance policy as proof of financial responsibility. It follows, State Farm charges, that when Turan-Foley represented that an insurance policy was in place, it was implicitly saying that the insurance policy complied with the requirements of the Safety Responsibility Law, when in fact it does not.

¶19. Universal submits that § 63-15-11 (4) provides that subsections 1 and 2 are inapplicable to persons who have a liability policy in effect at the time of the accident. ***Perry v. State Farm Mut. Auto. Ins. Co.***, 606 F. Supp. 270, 272 (S.D. Miss. 1985) ("Accordingly, a policy issued prior to an accident is not a 'motor vehicle liability policy' as defined in § 63-15-43(1), which is limited to those policies issued following an accident and certified as proof of financial responsibility."). Turan-Foley has not been shown to have ever been involved in an accident where it did not have liability insurance in effect. Universal reasons, therefore, that portion of the statute does not apply to the policy in the instant case. ***Mettetal***, 534 So.2d at 192; Miss. Code. Ann. § 63-15-11(1) & (2) (1996).[(2)](#)

¶20. In ***Mettetal***, this Court addressed whether § 63-15-43 applied to all automobile liability insurance policies issued in the State, or only to policies certified as proof of financial responsibility. 534 So. 2d at 189. This Court held that the provisions of § 63-15-43 only applied to the policies which had been certified as proof of financial responsibility and did not apply to all policies liability insurance. ***Id.*** at 193.

¶21. ***Mettetal*** expressly held that the provisions of § 63-15-43 do not apply to all policies of liability insurance issued within the State of Mississippi, but apply only to those policies which had been certified as proof of financial responsibility. ***Mettetal***, 534 So.2d at 193. In the instant case, there is no evidence which suggests that Turan-Foley did not comply with the Safety Responsibility Law with respect to supplying proof of financial responsibility after its accidents. There is no evidence that Turan-Foley had to get a policy

certified as proof of financial responsibility. More specifically, there is no evidence that the policy here in question was supplied by Turan-Foley as proof of financial responsibility.

¶22. Moreover, this is not an action against Turan-Foley, it is against Universal. Turan-Foley's compliance or non-compliance with the act is of no moment.

¶23. For the foregoing reasons, the judgment of the circuit court is affirmed.

¶24. **AFFIRMED.**

**PITTMAN, C.J., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, P.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**

1. In *Travelers,* the Court set out examples of the language found in an escape clause or an excess clause. The Court noted the following examples:

> (b) The insurance contained in this policy is not applicable to any person with respect to any loss against which he has other valid and collectible insurance.
>
> * * *
>
> Type (b) is termed an 'escape' or 'no liability' clause for the reason that it disclaims (escapes) liability in the event of other insurance.
>
> (c) If there is other insurance against a loss covered under this policy the insurance provided under this policy shall be excess insurance over any other valid and collectible insurance.
>
> * * *
>
> Type (c) is termed an 'excess' clause for the reason that it provides its coverage shall be excess coverage only over any other valid and collectible insurance.

*Travelers*, 246 So. 2d at 501.

2. § 63-15-11 (1) and (2) provide:

> 1) If twenty (20) days after the receipt of a report of a motor vehicle accident in this state which has resulted in bodily injury or death, or damage to the property of any one (1) person in excess of two hundred fifty dollars ($250.00), the department does not have on file evidence satisfactory to it that the person who would otherwise be required to file security under subsection (2) of this section has been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments with respect to all claims for injuries or damages resulting from the accident, the department shall determine the amount of security which shall be sufficient in its judgment to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each operator or owner.
>
> (2) The department shall, within sixty (60) days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, and if such operator is a nonresident the privilege of

operating a motor vehicle within this state, and if such owner is a nonresident the privilege of the use within this state of any motor vehicle owned by him, unless such operator or owner or both shall deposit security in the sum so determined by the department and shall also furnish proof of financial responsibility. Notice of such suspension shall be sent by the department to such operator and owner not less than ten (10) days prior to the effective date of such suspension and shall state the amount required as security. Where erroneous information is given the department with respect to the matters set forth in subdivisions (1), (2), and (3) of subsection (4) of this section, it shall take appropriate action as hereinbefore provided, within sixty (60) days after receipt by it of correct information with respect to said matters.