J. A10007/17

2017 PA Super 297

SAFE AUTO INSURANCE COMPANY : IN THE SUPERIOR COURT OF
                                    : PENNSYLVANIA
              v.                    :
                                    :
RENE ORIENTAL-GUILLERMO,            :
RACHEL DIXON, PRISCILA JIMENEZ,     :
LUIS JIMENEZ, ALLI LICONA AVILA     :
AND IRIS VELAZQUEZ                  :
                                    :
                                    :        No. 3226 EDA 2016
APPEAL OF:  PRISCILA JIMENEZ &      :
LUIS JIMENEZ                        :

Appeal from the Order Entered September 13, 2016,
in the Court of Common Pleas of Lehigh County
Civil Division at No. 2015-C-1547

BEFORE:  DUBOW, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

DISSENTING OPINION BY FORD ELLIOTT, P.J.E.:**FILED SEPTEMBER 18, 2017**

I respectfully dissent.  I believe that the MVFRL was never intended to abandon those who are injured using Pennsylvania highways for the protection of an automobile insurer's bottom line.  While it is correct that the MVFRL was enacted to address the high cost of insurance in this Commonwealth which skyrocketed under the former No-Fault Act, I do not believe that it was ever the intent of the legislature to enact a system in which low-cost, low-coverage insurance effectively makes for no insurance

at all.[1]  Automobile insurance companies come into Pennsylvania, register, and aggressively compete for business.  The fact that all vehicles operated on our highways must be insured has something to do with that.  I believe the MVFRL serves a dual purpose to both lower the cost of insurance, which in turn allows those who operate a vehicle to afford to do so, all in furtherance of protecting victims who are injured due to the operation of those vehicles.  Broad coverage exclusions which eliminate these protections should not be enforceable.  The insurer is in a much better position to accept the risk related to its insured than is the innocent injured victim.

When the legislature amended Section 1786(f) in 1990, it specifically expanded the breadth of financial responsibility for owners of motor vehicles. In *Progressive Northern Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A.2d 1116 (Pa.Super. 2006), *appeal denied*, 909 A.2d 1290 (Pa. 2006), we set forth the following:

> The 1990 amendments added subsection (f) to § 1786 to provide:
>
> Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or **permit it to be operated** upon a highway of

---

[1] *See*, *e.g.*, *An v. Victoria Fire & Cas. Co.*, 113 A.3d 1283, 1289-1290 (Pa.Super. 2015), *appeal denied*, 130 A.3d 1285 (Pa. 2015) (upholding a "named driver only" exclusion in a policy described as a "low-cost express product," which excluded liability coverage for any person not listed as a named driver on the policy in exchange for "substantially reduced premiums").

this Commonwealth without the financial responsibility required by this chapter.

75 Pa.C.S.A. § 1786(f) (emphasis added). This added provision alters the former § 1786 significantly. Where the pre–1990 provision required only that each motor vehicle registrant certify the registrant's financial responsibility, § 1786 now speaks directly about the necessity of ensuring coverage for each operated motor vehicle. Further, § 1786 now also directly states that financial responsibility is required when another operates the owner's vehicle with permission. Thus, contrary to Universal's position, the relevant provisions of the MVFRL did set forth material changes which make the analysis offered in [*State Farm Mut. Auto. Ins. v. Universal Underwriters Ins. Co.*, 701 A.2d 1330 (Pa. 1997)] inapplicable. In addition, we find that the language set forth in the 1990 version of the MVFRL suggests a contrary result to that reached in *State Farm*.[2]

Admittedly, the MVFRL continues not to include specific language directing that all permissive users of a vehicle be insured under the owner's insurance. However we find that the changes to § 1786 implicitly direct that such coverage be provided.

---

[2] The court [in *State Farm*] considered the [pre-1990] language of § 1786 which provided "that each motor vehicle registrant shall certify that he has provided 'financial responsibility' at the time he registers his vehicle." [*State Farm*, 701 A.2d at 1333] (citing 75 Pa.C.S.A. § 1786). The court rejected the proposition that all permissive users would have to be insured under the owner's policy to be in compliance with § 1786. It noted that § 1786 "is utterly silent as to whom the coverage of the owner's policy runs." *Id.* The court reasoned that such language could not be read as a mandate requiring insured drivers using another's vehicle with permission to be insured under the owner's policy.

*Progressive v. Universal*, 898 A.2d at 1118-1119.

> Subsection (f) speaks directly about requiring financial responsibility for vehicles which are being operated on the highways of this Commonwealth by owners or by others who have the owner's permission to operate their vehicle. This language supports this Court's statement that "[t]he requirements of the Motor Vehicle Financial Responsibility Law . . . are consistent with the concept that primary coverage follows ownership of the vehicle." **Nationwide Ins. Co. v. Horace Mann Ins. Co.**, 759 A.2d 9, 13 n.3 (Pa.Super. 2000). Thus, our reading of the MVFRL causes us to agree with the trial court that the legislature has provided clear indication that vehicle owners must provide coverage to vehicles they own and operate or permit others to operate. Accordingly, we uphold the trial court's ruling finding that McNeely, while using the Young Volkswagen vehicle with permission, was an insured under the Universal policy.

*Id.* at 1119. **See also Allstate Ins. Co. v. Tokio Marine & Nichido Fire Ins. Co., Ltd.**, 464 F.Supp.2d 452, 460-461 (E.D.Pa. 2006) ("[T]he MVFRL requires that all other vehicle owners maintain active financial responsibility on their vehicles at all times and that all permissive users of a vehicle be insured under the owner's insurance." (footnote omitted)); **Lebanon Coach Co. v. Carolina Cas. Ins. Co.**, 675 A.2d 279, 284 (Pa.Super. 1996), **appeal denied**, 687 A.2d 378 (Pa. 1997) ("Under Pennsylvania's [MVFRL], the vehicle's owner or registrant is responsible for maintaining financial responsibility for the vehicle. **See** [75] Pa.C.S.A. § 1786. It is the **vehicle** that is covered by the automobile policy, while an individual is covered only

by nature of his function as the driver of that vehicle." (footnotes and citation omitted; emphasis in original)).[3]

I am still of the belief that the legislature intended the insurance to follow the vehicle and did not intend that policies covering a vehicle could or should be limited by who is operating the vehicle. Section 1718(c) affords protection to both an insurer and an insured to exclude specific individuals whose risk of driving the vehicle is too high, both in cost of coverage and risk of injury to others. Absent this specific enactment, the exclusion of particular classes of drivers not specifically provided under the MVFRL clearly flies in the face of the legislative intent of the 1990 amendments to the MVFRL.

The Majority adopts the trial court's interpretation that Section 1786(f) "places the obligation on the owner of a vehicle, and not the insurance company, to ensure that anyone who drives the owner's car has insurance." (Majority Memorandum at 8.) According to the Majority, an owner of a car should only permit another person to drive his car if **that** driver has his own insurance. The Majority posits that any other interpretation of

---

[3] The policy exclusion at issue here provided that Safe Auto is not liable for damages that occur "while your covered auto is being operated by a resident of your household or by a regular user of your covered auto, unless that person is listed as an additional driver on the Declarations Page." Therefore, the insured could give permission to a total stranger to drive his car and that person would be covered, whereas his live-in fiancée is not. This incongruity suggests to me that even Safe Auto believed when it drafted the policy language that it could not exclude all permissive users under the MVFRL.

Section 1786(f) unfairly shifts the risk to insurance companies to insure unidentified individuals who might have access to an insured's vehicle. (**Id.** at 9, 12.)

However, in my mind, Section 1786 simply mandates that owners of motor vehicles have insurance. **See Cangemi v. Com., Dept. of Transp., Bureau of Driver Licensing**, 8 A.3d 393, 400-401 (Pa.Cmwlth. 2010) ("In enacting the MVFRL, the Legislature intended to provide a minimal level of compensation for victims of motor vehicle accidents. To ensure this compensation, the Legislature placed the burden on the owner or registrant of a vehicle to insure his or her vehicle and imposed penalties for the failure to do so. 75 Pa.C.S.[A.] §§ 1786(d)(1), (f). This policy choice is reasonable because the owner or registrant of a vehicle is in a better position to guarantee that the vehicle has insurance than a driver who is granted permission to borrow the vehicle." (citation omitted)). I believe that the trial court's interpretation, adopted by the Majority, runs counter to this court's holding in **Progressive v. Universal** that Section 1786(f) of the MVFRL implicitly directs that all permissive users of a vehicle be insured under the owner's insurance. But for the unlisted resident driver exclusion in this case, that would include Rachel Dixon, the insured's live-in fiancée, who was indisputably a permissive user of the covered vehicle. **Compare Nationwide Mut. Ins. Co. v. Cummings**, 652 A.2d 1338 (Pa.Super. 1994), **appeal denied**, 659 A.2d 988 (Pa. 1995) (upholding a

"non-permissive use" policy exclusion where the uninsured claimant was a passenger in a stolen vehicle).

Additionally, regarding the oft-repeated rubric that cost containment was the overarching policy concern of the MVFRL, appellants aptly point to the concurring Opinions in **Williams v. GEICO**, 32 A.3d 1195, 1200 (Pa. 2011), in support of their argument that the Pennsylvania Supreme Court has signaled a willingness to depart from prior pronouncements using cost control to validate all manner of policy exclusions. (Appellants' brief at 13.) Appellants are correct that a four-member majority of our supreme court, as constituted at that time, expressed their concern regarding cost control as the overriding goal of the MVFRL. **See Williams**, 32 A.3d at 1211 ("I join my colleagues in calling for advocates and the judiciary to cease their continued reliance on the unthinking perpetuation of the long-ameliorated concern for cost containment") (Baer, J., concurring); **id.** at 1213 ("I join those Justices who eschew the mantra of cost containment -- used by various courts to rotely limit the rights of insureds -- in favor of a recognition of other equally important policies and goals that are foundational to the MVFRL, such as the remedial objectives of the statute and the coverage rights of insureds") (Todd, J., concurring). **See also Heller v. Penn. League of Cities and Municipalities**, 32 A.3d 1213, 1222 (Pa. 2011) ("Despite our repeated affirmance of the cost containment policy underlying the MVFRL, we have cautioned that it has limits. While the enactment of the

MVFRL grew out of a legislative concern for the 'spiraling' costs of automobile insurance, the cost containment objective cannot be mechanically invoked as a justification for every contractual provision that restricts coverage and purportedly lessens the cost of insurance." (citation omitted)).

Besides cost containment, it is beyond cavil that another, equally important goal of the MVFRL is to protect Pennsylvania motorists from uninsured/underinsured drivers and to expand coverage. ***See Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.***, 746 A.2d 1118, 1123 (Pa.Super. 1999), ***affirmed***, 788 A.2d 955 (Pa. 2001) ("The policy of liberally construing the MVFRL is based upon the policy of indemnifying victims of accidents for harm they suffer on Pennsylvania highways." (citation omitted)); ***Cummings***, 652 A.2d at 1342 ("Two major considerations that prompted the repeal of the No-Fault Act and the enactment of the MVFRL were the escalating costs of purchasing motor vehicle insurance and the increasing numbers of uninsured motorists. In order to fulfill its purposes, the MVFRL established a recovery scheme that sets out minimum amounts of coverage that must be offered to the insured." (citations omitted)). I believe enforcement of Safe Auto's unlisted resident driver/regular user policy exclusion is not only contrary to Section 1786(f) of the MVFRL, which requires that permissive users be covered under the owner's insurance, but also very possibly contrary to public policy.

I respectfully dissent.