## PROGRESSIVE NORTHERN INSURANCE COMPANY

v.

## UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Universal Underwriters Group and Brent McNeely

**Appeal of: Universal Underwriters Insurance Company and Universal Underwriters Group**

**Progressive Northern Insurance Company, Appellant**

v.

**Universal Underwriters Insurance Company, Universal Underwriters Group and Brent McNeely, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 14, 2006.

Filed May 3, 2006.

Robert E. Dapper, Jr., Pittsburgh, for Universal.

Jeffrey A. Ramaley, Pittsburgh, for Progressive.

BEFORE: FORD ELLIOTT, P.J., DEL SOLE, P.J.E. and JOYCE, JJ.

OPINION BY DEL SOLE, P.J.E.:

¶ 1 This is an appeal from the judgment entered in accordance with the trial court's ruling following the consideration of post-trial motions filed in this declaratory judgment action submitted on stipulated facts. The trial court was asked to determine questions regarding liability and physical damage coverage in an instance where a driver operating a vehicle on loan from a car dealership was involved in an automobile accident with another vehicle.

¶ 2 The facts as agreed to by the parties are as follows: Brent McNeely (McNeely), the son of Michael McNeely and a resident of his household, was operating a vehicle owned by Young Volkswagen, Inc. (Young Volkswagen) and made available for his use when he was involved in an accident with a vehicle owned by third party. Michael McNeely was the owner of an automobile insurance policy purchased from Progressive Northern Insurance Company (Progressive). Universal Underwriters Insurance Company (Universal) was the automobile insurance carrier for Young Volkswagen at the time of the accident. Progressive received two claims for payment. The third party submitted a claim to recover for property damage to the third party vehicle and Universal submitted a claim for damage to the vehicle

owned by Young Volkswagen which was driven by McNeely and damaged in the accident.

¶ 3 After an examination of the policy language at issue, the trial court ultimately ruled that both the Universal policy and the Progressive policy provide liability and physical damage coverage to McNeely on a primary basis. Thereafter, both Universal and Progressive filed cross-appeals, prompting our review of the matter.

■ ¶ 4 We begin by noting that the parties do not dispute McNeely's status as an insured under the Progressive policy issued to his father. McNeely's status as an insured for purposes of liability coverage under the Universal policy is contested by the parties.[1] Of issue is the relevant policy language in the Universal policy which defines an insured as:

(4) Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

Universal Policy Garage Unicover Coverage Part 500, at 42. The trial court ruled that under the provisions of the Motor Vehicle Financial Responsibility Law (MVFRL), McNeely was "required by law to be an insured" and thus he fit within the definition of an insured under the Universal policy.

¶ 5 Universal disputes this ruling, relying principally on the Pennsylvania Supreme Court's decision in *State Farm Mut. Auto. Ins. v. Universal Underwriters Ins. Co.*, 549 Pa. 518, 701 A.2d 1330 (1997). The *State Farm* case is factually similar as it concerns an automobile dealership customer who, while driving a dealership vehi-cle on loan because her own car was being repaired, was involved in an accident with another vehicle. The customer's own insurer, State Farm, brought a declaratory judgment action against Universal, the dealership's insurer. State Farm sought to obtain compensation for part of the costs of the defense it offered its insured in an action brought by the third party and for settlement of the third-party claims. At issue was whether the customer was an insured under the terms of the Universal policy. The Universal policy language was identical to that found in this case and covered those persons "required by law to be an INSURED." *Id.* at 1332.

¶ 6 The court in *State Farm* concluded that under the provisions of the version of the MVFRL in effect in 1988, the customer was not "required by law to be an insured" where the customer was already "covered by financial responsibility due to her own auto insurance policy." *Id.* at 1333. In reaching this conclusion the court first remarked that the MVFRL did not contain an express clause requiring all permissive users of a vehicle to be insureds under the vehicle owner's policy of insurance. Noting that this point alone was not determinative, the court sought to analyze whether such a requirement could be implied. The court considered the language of § 1786 which provided "that each motor vehicle registrant shall certify that he has provided 'financial responsibility' at the time he registers his vehicle." *Id.* (citing 75 Pa.C.S.A. § 1786). The court rejected the proposition that all permissive users would have to be insured under the owner's policy to be in compliance with § 1786. It noted that § 1786 "is utterly

---

1. With respect to physical damage coverage, the Universal policy provides that it will pay for "LOSS of or to a COVERED AUTO from any cause." Universal Auto Inventory Unicover Coverage Part 300. A "covered auto" is defined as an auto "owned ... by YOU." *Id.* As the Young Volkswagen automobile driven by McNeely and involved in the accident was a "covered auto," the application of this coverage is clear.

silent as to whom the coverage of the owner's policy runs." *Id.* The court reasoned that such language could not be read as a mandate requiring insured drivers using another's vehicle with permission to be insured under the owner's policy.

¶ 7 In seeking application of *State Farm* to the instant case, Universal recognizes the cautionary language contained therein which provides:

> We note that the MVFRL underwent substantial amendments in 1990. These 1990 amendments are not applicable to this matter, however, as the accident in question predated their promulgation. We specially caution the lower courts and the practicing Bar that this opinion is not meant to be controlling precedent in interpretation of the provision of the post–1990 MVFRL.

*Id.* at 1332 n. 2.

Universal argues that although this case calls for a post–1990 analysis and the *State Farm* decision is therefore not controlling, its rationale and conclusion should be applied because the 1990 amendments did not materially change any of the relevant sections of the MVFRL. We do not accept this reading of the MVFRL.

¶ 8 The 1990 amendments added subsection (f) to § 1786 to provide:

> Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or **permit it to be operated** upon a highway of this Commonwealth without the financial responsibility required by this chapter.

75 Pa.C.S.A. § 1786(f) (emphasis added). This added provision alters the former § 1786 significantly. Where the pre–1990 provision required only that each motor vehicle registrant certify the registrant's financial responsibility, § 1786 now speaks directly about the necessity of ensuring coverage for each operated motor vehicle. Further, § 1786 now also directly states that financial responsibility is required when another operates the owner's vehicle with permission. Thus, contrary to Universal's position, the relevant provisions of the MVFRL did set forth material changes which make the analysis offered in *State Farm* inapplicable. In addition, we find that the language set forth in the 1990 version of the MVFRL suggests a contrary result to that reached in *State Farm.*

¶ 9 Admittedly, the MVFRL continues not to include specific language directing that all permissive users of a vehicle be insured under the owner's insurance. However we find that the changes to § 1786 implicitly direct that such coverage be provided. Subsection (f) speaks directly about requiring financial responsibility for vehicles which are being operated on the highways of this Commonwealth by owners or by others who have the owner's permission to operate their vehicle. This language supports this Court's statement that "[t]he requirements of the Motor Vehicle Financial Responsibility Law ... are consistent with the concept that primary coverage follows ownership of the vehicle." *Nationwide Ins. Co. v. Horace Mann Ins. Co.,* 759 A.2d 9, 13 n. 3 (Pa.Super.2000). Thus, our reading of the MVFRL causes us to agree with the trial court that the legislature has provided clear indication that vehicle owners must provide coverage to vehicles they own and operate or permit others to operate. Accordingly, we uphold the trial court's ruling finding that McNeely, while using the Young Volkswagen vehicle with permission, was an insured under the Universal policy.

¶ 10 We are next asked to review the trial court's finding that the Universal policy and the Progressive policy contain mutually repugnant clauses concerning priori-

ty of coverage and that this irreconcilable conflict permits neither to be enforced. This finding resulted in the trial court's conclusion that both policies provide liability and physical damage coverage to McNeely on a primary basis.

¶ 11 With respect to liability coverage, the Progressive policy issued to McNeely's father provides:

**OTHER INSURANCE**

If there is other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is a proportion that **our** Limit of Liability bears to the total of all applicable limits. Any insurance **we** provide for a **vehicle**, other than a **covered vehicle**, will be excess over any other collectible insurance, self insurance, or bond.

Progressive Policy, Part 1—Liability to Others, Other Insurance, at 10. (emphasis in original).

¶ 12 At the time of the accident, McNeely was not operating a vehicle covered under the Progressive policy. The language of the Progressive policy which applies to the use of a non-owned auto is the excess clause set forth in the second sentence of the Other Insurance provision. *See Nationwide Ins. Co. v. Horace Mann Ins. Co*, 759 A.2d at 12 (noting the distinctive application of the *pro rata* and excess provisions applicable to owned and non-owned vehicles). This clause clearly states that liability coverage under the Progressive policy will be considered excess coverage when the vehicle involved in the accident is not a covered vehicle as was the case instantly.

¶ 13 The Universal policy also contains a provision dealing with other insurance under the liability provisions of the policy. It reads:

**OTHER INSURANCE**—The insurance afforded by this Coverage part is primary, except it is excess:

. . .

(2) for any person or organization under part (3) or (4) of WHO IS AN INSURED with respect to the AUTO HAZARD.

Universal Policy Garage Unicover Coverage Part 500, at 48. We have already determined that McNeely was an insured under the auto hazard definition of an insured under subpart (4) of the Universal policy. Thus the "other insurance" provision of the liability insurance issued by Universal directs that it be considered excess.

¶ 14 As both the Progressive and Universal policies dictate that their liability coverage in this instance is excess, they are irreconcilable. "Where two policies each purport to be excess over the other, such clauses are mutually repugnant; both must be disregarded and the insurers must share in the loss." *Nationwide Ins. Co. v. Horace Mann Ins. Co.*, 759 A.2d at 12 (citing *American Casualty Co. v. PHICO Ins. Co.*, 549 Pa. 682, 702 A.2d 1050, 1053–54 (1997)). Accordingly, the trial court properly ruled that the excess coverage liability provisions of the Progressive and Universal policies cannot be given effect.

¶ 15 A like result was properly found with regard to physical damage coverage under the two policies. The Progressive policy contains an "Other Insurance" clause related to property damage-collision coverage which is very similar to that discussed with regard to the liability coverage portion of the policy. It provides:

**OTHER INSURANCE**

If there is other applicable insurance, **we** will pay only **our** share of the **loss**.

**Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable limits of liability. However, any insurance that **we** provide for a **vehicle**, other than a **covered vehicle** ... will be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by the **owner** of the **owned vehicle** ...; and

2. any other applicable physical damage insurance.

Progressive Policy, Part IV–Damage to a Vehicle, Other Insurance, at 36.

¶ 16 The Universal policy includes an "other insurance" provision with regard to its physical damage coverage. It states:

**OTHER INSURANCE**—This insurance is primary over any other insurance except when the COVERED AUTO is in the care, custody, or control of any person or organization, other than YOU, a member of YOUR household, YOUR partner, director, stockholder, executive officer, or paid employee or a member of the household of any of them.

Universal Policy, Unicover Coverage Part 300, at 14.

¶ 17 Under the facts of this case the Progressive policy property damage coverage is purported to be excess coverage where the vehicle which sustained a loss was not a covered vehicle. The Universal policy also reads so as to provide excess property damage coverage in this case where the covered auto was not in the control of any of the listed individuals. Because the policy language in both of these policies indicates that physical damage coverage is excess, these clauses were found by the trial court to be mutually repugnant. We agree. The excess provisions of the two policies cannot be given effect without creating the absurd result denying coverage under both. In this instance the trial court properly found that the clauses could not be enforced and that the insurers must both share in the loss. We affirm this ruling.

¶ 18 Judgment affirmed.