2 A.3d 1165 (2010)
415 N.J. Super. 597
May L. WALKER, on behalf of herself and all others similarly situated, Plaintiff-Respondent/Cross-Appellant,
v.
Carmelo GIUFFRE, individually, Carmelo Giuffre, d/b/a Bay Ridge Automotive Management Corp., Route 22 Auto Sales, Inc., Route 22 Automobiles, Inc., Hudson Auto Sales, Inc., Freehold Auto Sales, Inc., Freehold Automotive Limited, Inc., and Freehold Jeep/Eagle, Inc., Defendants, and
Route 22 Nissan, Inc., Defendant-Appellant/Cross-Respondent.
No. A-2942-08T2.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 2010.
Decided August 31, 2010.
*1167 Salvatore A. Giampiccolo argued the cause for appellant/cross-respondent (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Mr. Giampiccolo and Lisbeth W. Cload, Ridgewood, of counsel and on the briefs).
Steven A. Skalet (Mehri & Skalet), Washington, DC, of the District of Columbia bar, admitted pro hac vice, argued the cause for respondent/cross-appellant (Galex Wolf, attorneys; Andrew R. Wolf, of counsel; Mr. Wolf and Henry P. Wolfe, North Brunswick, on the briefs).
Before Judges SKILLMAN, FUENTES and GILROY.
The opinion of the court was delivered by
FUENTES, J.A.D.
In December 2001, plaintiff Mary L. Walker purchased a new 2002 Nissan from defendant Route 22 Nissan, Inc.[1] She filed a class action suit against defendant and other car dealerships claiming that they had committed regulatory violations contrary to the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18.
At the time plaintiff filed this suit, defendant was also named in a similar class action suit filed in Bergen County. Although plaintiff was included within that class, she decided to opt out of it and to proceed individually against defendant. Thus, although the trial court initially certified this class, it later decertified it after the Bergen County matter settled.
Ultimately, the court granted plaintiff's motion for summary judgment in the action before us, finding that defendant had violated the CFA and the TCCWNA; the court awarded plaintiff $654.50 in damages, $99,252.50 in attorney's fees, and $5431.14 in costs.
Defendant now appeals challenging the trial court's ruling in all respects. Plaintiff cross-appeals from the court's decision to decertify the class. We affirm the trial court's ruling as to liability and its decision to decertify the class. We reverse and *1168 vacate the award of counsel fees, however, and remand for the court to reconsider the amount of counsel fees plaintiff is entitled to under prevailing legal standards.
The following facts will inform our discussion of the legal issues raised by the parties.

I
Plaintiff purchased a 2002 Nissan from defendant in December 2001. The sales contract contained the following language in size eight font: "YOU HAVE THE RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC DOCUMENTARY AND PRE-DELIVERY SERVICE WHICH IS TO BE PERFORMED." The size of the font violated the provisions of N.J.A.C. 13:45A-26B.2(a)2, which requires statements concerning pre-delivery services to be written in size ten font on the sales contract.
The sales contract included an itemized charge of $199.00 for a "documentary fee"; this figure was further subdivided to reflect charges for messenger, clerical, and computer fees. Additionally, the contract included a $140.00 charge for motor vehicle registration and the transfer of license plates (the registration fee). Plaintiff also signed a power of attorney appointing defendant as her attorney-in-fact for transferring title and registration.
Because she was financing part of the purchase price, plaintiff signed a separate retail installment contract that identified certain charges as "amounts paid to others on your behalf." Written in smaller type, the contract read: "To the extent permitted by applicable law, [we] may retain a portion of these amounts." The $140.00 registration fee was included within that category of charges. Defendant conceded before the trial court that the amount charged by the New Jersey Motor Vehicle Commission for transferring the license plates and registration was only $88.50, leaving a surplus of $51.50.
On April 25, 2003, plaintiff filed this class action suit against defendant, also naming six other car dealerships under common ownership with defendant, the individual who owned the dealerships, and a New York corporation, alleging that the registration fee violated the CFA and the TCCWNA.
After joinder of issue and preliminary motion practice, plaintiff moved for class certification. While this motion was pending, a Bergen County class action suit alleging similar deceptive practices was in settlement negotiations. That case, Cerbo v. Ford of Englewood, Inc., No. BER-L-2871-03, 2006 WL 177586 (Law Div. Jan. 25, 2006), identified defendant as a responsible party. The Cerbo case, however, named approximately 550 defendants, consisting of virtually all of the automotive dealers in New Jersey, and the class encompassed more than two million purchasers. Although plaintiff had opted out of this class, the judge presiding over the Cerbo case permitted defendant to participate in settlement discussions that took place in May 2005.
On June 24, 2005, the court in the matter before us preliminarily approved the class, but clarified that class certification would only take effect in the event that the Cerbo case did not settle. If Cerbo settled, as was expected, plaintiff's class would not be certified. On July 1, 2005, the court granted plaintiff's application for class certification, limited to only Route 22 Nissan, Inc. On January 25, 2006, the Bergen County court approved the Cerbo settlement. On May 15, 2006, the trial court granted defendant's motion to decertify this class.

II
Plaintiff's counsel was awarded $119,862.00 in fees as part of the Cerbo *1169 settlement. The record is not clear, however, whether this payment was for work performed in the Cerbo case or to settle a dispute between the Cerbo attorneys. On August 3, 2006, plaintiff moved for partial summary judgment predicated on defendant's violation of the CFA and the TCCWNA. Defendant cross-moved for summary judgment, arguing that plaintiff's claims were preempted by the Federal Truth in Lending Act, 15 U.S.C.A. §§ 1601-1667f (TILA).
The court granted plaintiff's motion for partial summary judgment, finding that defendant had violated the CFA by overcharging plaintiff for the registration fee. The court found that plaintiff suffered an ascertainable loss of $51.50, then trebled that amount pursuant to N.J.S.A. 56:8-19. The court did not find, however, an ascertainable loss based on the violation of N.J.A.C. 13:45A-26B.2(a)2 for the font size used in the sales contract. Consequently, the trial court denied plaintiff any relief on that basis. As to liability under the TCCWNA, the court imposed a $500 civil penalty. Finally, the court denied defendant's cross-motion for summary judgment, holding that plaintiff's claims were not precluded by the TILA.
Plaintiff's counsel then submitted a certification in support of his motion for attorney's fees. In response, defendant argued that the counsel fee award in the Cerbo case covered the same work, rendering this application moot, or alternatively, substantially duplicative. In order to assess the merits of defendant's claims, the court directed plaintiff's counsel to submit the Cerbo fee agreements (the agreements) for in camera inspection.
As a threshold issue, overruling plaintiff's counsel's objections, the court determined that the agreements were discoverable. In response, plaintiff's counsel and their co-counsel in Cerbo filed motions to quash defendant's subpoenas seeking copies of the agreements. After considering oral argument, the court ordered that unless plaintiff's counsel credited defendant with the amount of fees paid to them in Cerbo, defendant would be permitted limited discovery of redacted versions of the agreements. Plaintiff's counsel opted to credit defendant with the amount they had received in the Cerbo case.
Notwithstanding this limited relief, defendant continued to request discovery of the agreements. The court held, however, that in light of the credit awarded, the agreements were no longer relevant. Nevertheless, the court permitted limited deposition testimony of plaintiff's counsel regarding the breakdown of time spent preparing various aspects of the case. The court thus allowed limited discovery concerning the amount of hours plaintiff's counsel spent addressing the case's merits, class certification, and standing issues. Plaintiff's counsel rejected this approach, claiming that they were unable to segregate their billing records into those categories.
The court issued a comprehensive written opinion in which it explained the basis for finding defendant liable under both the CFA and the TCCWNA. As to counsel fees, the court awarded plaintiff's attorney $99,252.50, which included a forty-five percent enhancement, as well as expenses totaling $5431.14. With respect to the amount of fees awarded, the court noted that the original application had requested over $700,000.00. Despite this, it decided to award less than $100,000.00 due primarily to plaintiff's lack of success in becoming a class representative.
After reviewing the "un-categorized" billing records provided by plaintiff's counsel, the court determined that, in its judgment, these hourly rates and the work performed in connection with the successful *1170 claims were fair and reasonable. The court then enhanced this amount by forty-five percent based upon the "contingency fee" arrangement between plaintiff and her counsel. The court justified this enhancement by noting that the history of this case "can hardly be classified as `typical.'"

III
We begin our review of the trial court's ruling by stating that, on the question of liability, we are in complete agreement with the analysis and conclusions expressed by the court in its memorandum of opinion. We thus affirm the judgment on liability and damages substantially for the reasons expressed by the trial court. For the same reasons, we affirm the court's decision to decertify the class. Plaintiff is entitled to summary judgment under the CFA based on the undisputed fact that she was overcharged for fees connected with the registration of her motor vehicle. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Equally undisputed are the facts supporting violations of the TCCWNA.
Based on the record before us, however, we cannot sustain the fees awarded by the court to plaintiff's counsel. We are thus compelled to remand for further analysis on this issue. In reaching this conclusion, we are mindful that the Court in Furst cautioned against using attorney fee applications as an opportunity "to become mired in a second round of litigation." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 24, 860 A.2d 435 (2004). This admonition assumes, however, that the attorney certifications will be "sufficiently detailed to allow a trial court to determine the nature of the work performed and by whom, as well as the reasonableness of the hourly rate and the hours expended." Id. at 25, 860 A.2d 435.
As correctly noted by the trial court, an award of counsel fees is calculated by determining the "lodestar," i.e. a reasonable hourly charge multiplied by the number of hours expended. Rendine v. Pantzer, 141 N.J. 292, 334-35, 661 A.2d 1202 (1995). In determining the lodestar, the court should compare the hourly rate of the attorney to the rates charged for similar services of attorneys in the community with "comparable skill, experience, and reputation." Id. at 337, 661 A.2d 1202. The court must determine reasonable hourly billing rates that are "fair, realistic, and accurate." Ibid.
The next step in this analysis requires the court to determine the hours that were reasonably expended pursuing the statutory objectives. Furst, supra, 182 N.J. at 22, 860 A.2d 435. Once the reasonable number of hours have been ascertained, the court should reduce the lodestar if the prevailing party achieved modest success in relation to the relief sought. Id. at 23, 860 A.2d 435. In going about this task, however, there need not be a direct proportionality between the fee and the damages recovered. Ibid. Finally, when the attorney has been retained on a contingency fee basis, the trial court may determine whether to enhance the fee, giving consideration to the results achieved, the risks involved, and the relative likelihood of success for the undertaking. Ibid.
Here, the court emphasized that although attorney fees should only be awarded for work done on successful claims, it found it difficult to identify what specific work was attributable to those claims. The court thus decided to recognize the Cerbo credit in lieu of the particularized review otherwise required by Rendine. In adopting this approach, the court implicitly accepted the veracity of plaintiff's counsel's assertion that it was impossible *1171 to categorize their work to respond to the required standard of review.
We do not share the trial court's willingness to accept counsel's representation as dispositive or controlling in this respect. Although we agree with the court's decision to credit defendant for the counsel fees plaintiff's counsel received in connection with the Cerbo settlement, this does not relieve counsel of the responsibility of justifying the fees requested here by connecting the hours utilized to the claims that were successfully prosecuted.
The court's specific determination of the hourly rate awarded to the attorneys involved in plaintiff's case is also not supported by competent evidence. RPC 1.5(a) sets forth the factors necessary to determine whether an attorney fee is reasonable:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; [and] (8) whether the fee is fixed or contingent.
Rule 4:42-9(b) requires that an attorney submit an affidavit of service addressing the factors listed in RPC 1.5(a).
Although the court made specific findings regarding the RPC 1.5(a) factors and determined that the time and labor required to litigate this case were substantial, with respect to the fee customarily charged in the locality for similar legal services, the court merely stated:
I have handled a significant number of class actions and ruled on a number of fee requests. The fees requested in this case are generally consistent with what I have seen and awarded in the past. In my opinion, they are reasonable.
The personal opinion of a trial judge predicated solely on his or her own professional experiences does not satisfy the analysis required by the Court under Rendine to determine a reasonable hourly rate. Under Rendine, "a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." Rendine, supra, 141 N.J. at 337, 661 A.2d 1202 (quotation and citation omitted). Once the court ascertains the "prevailing market rates in the community" it can then "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Ibid.

IV
We next address the court's decision to enhance the fees requested by plaintiff's counsel by forty-five percent. The only explanation given by the court for this decision is reflected in the following statement: "Given the history of this case, which can hardly be classified as `typical,' I believe that an enhancement at the top of [the] `ordinary' range, forty-five percent, is fully warranted." This declaratory statement is devoid of analytical support and is inconsistent with the most recent decision of the United States Supreme Court setting the standard for fee enhancement in fee-shifting cases.[2]
*1172 In Perdue v. Kenny A., ___ U.S. ___, 130 S.Ct. 1662, 1669, 176 L.Ed.2d 494, 501-02 (2010), the Court addressed a fee enhancement awarded in a class action suit filed by 3000 children who challenged the administration of the State of Georgia's foster-care system. The plaintiffs sought injunctive and declaratory relief against the Governor and other Georgia officials. Id. at ___, 130 S.Ct. at 1669, 176 L.Ed.2d at 502. The parties ultimately entered into a consent decree that resolved all of the issues in the suit. Ibid.
As the prevailing parties, the plaintiffs sought $14 million in attorney's fees under 42 U.S.C.A. § 1988; only half of the amount requested was based on the lodestar. Id. at ___, 130 S.Ct. at 1670, 176 L.Ed.2d at 502. The other half represented a fee enhancement "for superior work and results." Ibid. Although the District Court found that the hourly rates reported were fair and reasonable, it nevertheless reduced the requested amount to $10.5 million. Ibid. The court based its reduction on the vagueness of the records presented by counsel and excessive hours claimed for particular tasks performed. Ibid.
Despite this reduction, the District Court enhanced the award by seventy-five percent
concluding that the lodestar calculation did not take into account "(1) the fact that class counsel were required to advance case expenses of $ 1.7 million over a three-year period with no on[-]going reimbursement, (2) the fact that class counsel were not paid on an on-going basis as the work was being performed, and (3) the fact that class counsel's ability to recover a fee and expense reimbursement were completely contingent on the outcome of the case." The court stated that respondents' attorneys had exhibited "a higher degree of skill, commitment, dedication, and professionalism... than the Court has seen displayed by the attorneys in any other case during its 27 years on the bench." The court also commented that the results obtained were "extraordinary" and added that "[a]fter 58 years as a practicing attorney and federal judge, the Court is unaware of any other case in which a plaintiff class has achieved such a favorable result on such a comprehensive scale."
[Id. at ___, 130 S.Ct. at 1670, 176 L.Ed.2d at 503 (internal citations omitted).]
In reversing the District Court's enhancement award, the Court in Perdue compiled what it characterized as "six important rules" in determining an award of counsel fees to prevailing parties in fee-shifting cases:
First, a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case ...
Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. Indeed, we have said that the presumption is a strong one.
Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in rare and exceptional circumstances.
Fourth, ... the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected *1173 in the number of billable hours recorded by counsel. We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.
Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.
Finally, a fee applicant seeking an enhancement must produce specific evidence that supports the award. This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.
[Perdue, supra, ___ U.S. at ___, 130 S.Ct. at 1672-73, 176 L.Ed.2d at 505-06 (quotations and citations omitted).]
After applying these six factors to the application before it, the Court found no basis to sustain the District Court's seventy-five percent enhancement. Id. at ___, 130 S.Ct. at 1675, 176 L.Ed.2d at 508. In reaching this conclusion, the Court made the following observation:
[I]nsofar as the District Court relied on a comparison of the performance of counsel in this case with the performance of counsel in unnamed prior cases, the District Court did not employ a methodology that permitted meaningful appellate review. Needless to say, we do not question the sincerity of the District Court's observations, and we are in no position to assess their accuracy. But when a trial judge awards an enhancement on an impressionistic basis, a major purpose of the lodestar method providing an objective and reviewable basis for feesis undermined.
[Id. at ___, 130 S.Ct. at 1676, 176 L.Ed.2d at 509.]
We confront a similar situation here. Although we too do not doubt the trial judge's sincerity, his assessment of the reasonableness of the fees requested here, based only on the judge's personal experiences, undermines our appellate review. We thus remand this matter to the trial court to reconsider plaintiff's request for counsel fees after applying all of the factors outlined by the Court in Perdue, as well as the guidelines established by our own Supreme Court in Rendine.[3]

V
Thus, regarding defendant's appeal, we affirm the trial court's order granting plaintiff's summary judgment motion on the question of liability under the CFA and the TCCWNA, the damages awarded under the CFA, and the civil penalty under the TCCWNA. We reverse the court's award of counsel fees and remand for reconsideration in light of prevailing legal standards. On plaintiff's cross-appeal, we affirm the trial court's ruling decertifying the class.
NOTES
[1] Although plaintiff named other parties as defendants, we will refer to "defendant" in the singular because the arguments raised by the parties only concern Route 22 Nissan, Inc.
[2] In this respect, we obviously do not fault the trial judge for failing to apply the legal principles of a case that had not been decided when he made his ruling.
[3] We recognize that the trial judge who decided this case is no longer available to carry out our remand order. We will therefore rely on the vicinage's Assignment Judge to designate a substitute judge who can complete this task.