# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SAFE AUTO INSURANCE COMPANY | : | No. 26 MAP 2018 |
| | : | |
| | : | Appeal from the Order of the Superior |
| v. | : | Court dated September 18, 2017 at |
| | : | No. 3226 EDA 2016 affirming the |
| | : | Order of the Court of Common Pleas |
| RENE ORIENTAL-GUILLERMO, RACHEL | : | of Lehigh County, Civil Division, dated |
| DIXON, PRISCILA JIMENEZ, LUIS | : | September 13, 2016 at No. 2015-C- |
| JIMENEZ, ALLI LICONA AVILA AND IRIS | : | 1547 |
| VELAZQUEZ | : | |
| | : | ARGUED:  December 6, 2018 |
| | : | |
| APPEAL OF: PRISCILA JIMENEZ & LUIS | : | |
| JIMENEZ | : | |

## OPINION

**JUSTICE TODD**                                        **DECIDED:  August 20, 2019**

In this appeal by allowance, we consider the enforceability of an unlisted resident driver exclusion ("URDE") in a personal automobile insurance policy.  For the reasons that follow, we conclude that the URDE at issue in this case is enforceable.  Accordingly, we affirm the order of the Superior Court.

On April 29, 2013, Rachel Dixon was driving a car owned by her boyfriend, Rene Oriental-Guillermo ("Policyholder"), when she was involved in an accident with a vehicle in which Priscila Jimenez was a passenger, and which was owned by Iris Velazquez, and operated by Alli Licona-Avila.  At the time of the accident, Dixon resided with Policyholder, who had purchased a personal automobile insurance policy ("Policy") for his vehicle through Safe Auto Insurance Company ("Safe Auto").  The Policy contains a URDE, which

excludes from coverage any individuals who live with, but are not related to, the policyholder, and whom the policyholder does not specifically list as an additional driver on the insurance policy. Specifically, the URDE at issue provides:

> PART 1 - LIABILITY COVERAGE
>
> EXCLUSIONS
>
> LIABILITY COVERAGE AND OUR DUTY TO DEFEND DO NOT APPLY TO BODILY INJURY OR PROPERTY DAMAGE:
>
> 1. That occurs while your covered auto is being operated by a resident of your household or by a regular user of your covered auto, unless that person is listed as an additional driver on the Declarations Page.

Policy, at 6 (Reproduced Record ("R.R.") at 43a). It is undisputed that Dixon was not listed as an additional driver on the Policy.

Jimenez and her husband Luis (collectively, "Appellants") filed a personal injury lawsuit against Dixon, Policyholder, and Licona-Avila. On May 13, 2015, Safe Auto filed a complaint against Dixon, Policyholder, and Appellants, seeking a declaratory judgment regarding the enforceability of the URDE with respect to Dixon. The trial court granted summary judgment in favor of Safe Auto, finding the URDE unambiguous, valid, and enforceable, and concluding that Safe Auto has no duty under the Policy to defend or indemnify Dixon in the underlying personal injury lawsuit. Appellants timely appealed to the Superior Court, arguing (1) that the trial court erred in holding the URDE is valid and enforceable; (2) that the URDE violates the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL")[1]; and (3) that the URDE violates public policy.[2]

The Superior Court affirmed the order of the trial court in a divided, published opinion authored by Judge Alice Dubow. *Safe Auto Ins. Co. v. Oriental-Guillermo*, 170

---

[1] 75 Pa.C.S. §§ 1701 *et seq.*

[2] Dixon and Policyholder are not parties to the instant appeal.

A.3d 1170 (Pa. Super. 2017). Concluding that the language of the Policy is unambiguous, and noting there is no dispute as to the material facts, the court first held that the trial court properly determined that the exclusion applies and that Safe Auto is not obligated to defend Dixon.

The court next considered Appellants' argument that the URDE contravenes the language of the MVFRL mandating that an owner of a motor vehicle ensure that all drivers of his vehicle are covered by insurance. Specifically, Section 1786(f) of the MVFRL provides:

> **Operation of a motor vehicle without required financial responsibility.–**Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter.

75 Pa.C.S. § 1786(f).

Upon review of Section 1786(f), the court concluded that the provision "places the obligation on the owner of a vehicle, and not the insurance company, to ensure that anyone who drives the owner's car has insurance." *Safe Auto*, 170 A.3d at 1175. The court opined that holding an insurance company "automatically responsible for providing insurance to the otherwise uninsured driver" would "shift to the insurance company unidentified risks," when there is no provision in the MVFRL suggesting that the legislature, in enacting the MVFRL, intended to do so. *Id.* Thus, the court rejected Appellants' argument that the URDE is contrary to the language of Section 1786(f).

The court further rejected Appellants' claim that the URDE is contrary to the provisions of the MVFRL in light of its alleged similarity to a "named driver exclusion" ("NDE").[3] Appellants argued that the public policy underlying the NDE provisions of the

---

[3] Section 1718(c) provides:

MVFRL is "that the insurance company must insure every individual who uses an insured's vehicle unless the insured specifically asks the insurance company not to provide coverage for that driver." *Id.* at 1176. However, observing that, similar to the URDE at issue herein, an NDE permits a policyholder, in certain instances, to exclude from his policy certain individuals for whom the policyholder does not want to provide coverage, the court found the policy implications of the NDE and the URDE were consistent. Specifically, both an NDE and a URDE allow the insured, in certain instances, to "determine[] those drivers of the insured's car for which the insured will purchase insurance. If the insured chooses not to purchase insurance for those drivers of his car, the insurance company is not required to provide insurance." *Id.* The court found this principle consistent with Section 1786(f) of the MVFRL, in which the legislature placed the burden on the insured to make sure that the individuals who drive the insured's vehicle have insurance.

Finally, the court rejected Appellants' argument that the URDE is void against public policy because it undermines the goal of maximum feasible restoration to accident victims. The court noted that maximum feasible restoration is "just one of many goals of

---

(c) Named Driver Exclusion.-
> An insurer or the first named insured may exclude any person or his personal representative from benefits under a policy enumerated in section 1711 or 1712 when any of the following apply:
> (1) The person is excluded from coverage while operating a motor vehicle in accordance with the act of June 5, 1968 (P.L. 140, No. 78), relating to the writing, cancellation of or refusal to renew policies of automobile insurance.
> (2) The first named insured has requested that the person be excluded from coverage while operating a motor vehicle. This paragraph shall only apply if the excluded person is insured on another policy of motor vehicle liability insurance.

75 Pa.C.S. § 1718(c).

the MVFRL." *Id.* Ultimately, the court concluded that the MVFRL "does not anticipate always shifting the burden [to] insurance companies to discover the identities of resident, non-family member insureds, who have access to an insured's vehicle; that is a burden more appropriately placed in the hands of the insured." *Id.* at 1177.

President Judge Emeritus Ford Elliott authored a dissenting opinion wherein she concluded that the URDE is contrary to Section 1786(f) of the MVFRL and "very possibly contrary to public policy." *Id.* at 1180 (Ford Elliott, P.J.E., dissenting). She suggested that the MVFRL serves the dual purposes of (1) lowering the cost of insurance, which allows those who operate a vehicle in the Commonwealth to do so affordably, and (2) protecting victims who are injured due to the operation of those vehicles. In her view, the insurer is in a better position to accept the risk related to its insured than is "the innocent injured victim." *Id.* at 1177. Quoting at length the Superior Court's decision in *Progressive Northern Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A.2d 1116 (Pa. Super. 2006), Judge Ford Elliott opined that the legislature intended that insurance "follow the vehicle," rather than intending that policies covering a vehicle be limited by who is operating the vehicle. *Safe Auto*, 170 A.3d at 1179 (Ford Elliott, P.J.E., dissenting). She further suggested that Section 1786 "implicitly directs that all permissive users of a vehicle be insured under the owner's insurance." *Id.*

Finally, to the extent that cost control has been viewed as the overriding goal of the MVFRL, Judge Ford Elliott suggested that this Court has signaled a willingness to depart from that principle, noting that, in *Heller v. Pa. League of Cities and Municipalities*, 32 A.3d 1213 (Pa. 2011), we held that a workers' compensation exclusion to underinsured motorist ("UIM") coverage in an employer-purchased automobile insurance policy violated public policy, and, in doing so, cautioned that the cost containment objective underlying the MVFRL has limits, and "cannot be mechanically invoked as a justification for every

contractual provision that restricts coverage and purportedly lessens the cost of insurance." *Id.* at 1222.

Appellants filed a petition for allowance of appeal, and this Court granted review to consider the following issues, as framed by Appellants:

> a. Did the Superior Court err as a matter of law in finding that the [URDE] in a Personal Auto Policy is valid and enforceable and not violative of the terms and provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701, *et. seq.*?
>
> b. Did the Superior Court err as a matter of law in finding that the [URDE] in a Personal Auto Policy is valid and enforceable and not violative of the public policy of the Commonwealth of Pennsylvania as embodied in § 1786 of the [MVFRL], 75 Pa.C.S.A. § 1786, which implicitly directs that all permissive users of an insured vehicle be insured under the owner's insurance policy?

*Safe Auto Ins. Co. v. Oriental-Guillermo*, 187 A.3d 204 (Pa. 2018) (order).

As a preliminary matter, we note that the questions raised by Appellants present questions of law; thus, our scope of review is plenary and our standard of review is *de novo. Heller,* 32 A.3d at 1220. Additionally, it is well established that, in construing a policy of insurance, a court is required to give plain meaning to a clear and unambiguous contract provision unless such provision violates the law or a clearly expressed public policy. *Eichelman v. Nationwide Ins. Co.,* 711 A.2d 1006, 1008 (Pa. 1998).

When considering whether a contract violates public policy, we are mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract. Rather,

> [p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] . . . Only dominant public policy would justify

such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action.

\* \* \*

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Heller*, 32 A.3d at 1220-21 (citations omitted and second alteration original).

With the above standards in mind, we turn to the questions before us. With respect to their first issue, Appellants claim that the URDE in the Policy violates the terms and provisions of the MVFRL. Specifically, they contend that the URDE is inconsistent with Sections 1786(a) and (f), which provide:

### § 1786. Required financial responsibility

**(a) General rule.**−Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

\* \* \*

**(f) Operation of a motor vehicle without required financial responsibility.**–Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter.

75 Pa.C.S. § 1786(a), (f).[4]

---

[4] "Financial responsibility" is defined in the MVFRL as:

The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the

Appellants acknowledge that Section 1786(a) requires that all *vehicles* be covered by insurance. However, they maintain there is no requirement in the MVFRL that a vehicle owner identify all *permissive users* of his or her vehicle when obtaining insurance coverage. In this regard, they contend that the URDE is inconsistent with the terms of the MVFRL. As support for this assertion, Appellants point to another section of the MVFRL, Section 1782, titled "Manner of providing proof of financial responsibility," which provides, in part:

> **(a) General rule.**−Proof of financial responsibility may be furnished by filing evidence satisfactory to the department that *all motor vehicles* registered in a person's name are covered by motor vehicle liability insurance or by a program of self-insurance as provided by section 1787 (relating to self-insurance) or other reliable financial arrangements.

*Id.* § 1782(a) (emphasis added). In Appellants' view, the URDE improperly shifts the burden of identifying all permissive users of a vehicle to the vehicle's owner, when the MVFRL does not require the same.

Further, citing the dissent below and the Superior Court's decision in *Progressive Northern*, *supra*, Appellants argue that Section 1786(f) "implicitly direct[s] that all permissive drivers be insured under the owner's policy." Appellants' Brief at 14. According to Appellants, the Superior Court's holding in the instant case "run[s] afoul of the legislative mandate" of Section 1786(f), and places an unreasonable burden on

---

amount of $5,000 because of damage to property of others in any one accident.

*Id.* § 1702. Furthermore, "Insured" is defined as any of the following:

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.
(2) If residing in the household of the named insured:
    (i) a spouse or other relative of the named insured; or
    (ii) a minor in the custody of either the named insured or relative of the named insured.

*Id.*

vehicle owners to ensure that "all permissive users [of his vehicle] do not fall within the limitations of a coverage exclusion," a result which, in Appellants' view, "defies common sense," in that coverage is denied to Policyholder's "live-in fiancé," who was operating the vehicle with permission, but would be afforded to "a stranger operating the vehicle with permission." *Id.* at 17-18.

In this regard, Appellants suggest that the URDE "must be viewed in the context of the coverage model of the entire Safe Auto Policy," *id.* at 11, and they point to a clause in the Policy titled "Protection for Others," which provides:

> Anyone using your covered auto with the covered auto owner's permission, and within the scope of such permission, has the same rights and obligations that you have under this coverage. *However, this protection is not afforded to any regular or occasional user of your covered auto or to any resident of your household, unless that person is listed as an additional driver on the Declarations Page.* Any change in regular operators, newly licensed drivers or residents in your household must be reported to us immediately.

Policy, at 6 (R.R. at 43a) (emphasis added).[5]  According to Appellants, the above-italicized language is further evidence that Safe Auto is attempting to restrict coverage "well beyond the customary coverage provisions."  Appellants' Brief at 12.

In response to Appellants' arguments, Safe Auto first asserts that Appellants' claim that the URDE is inconsistent with the "Protection for Others" provision of the Policy was not raised before the Superior Court and was not included in this Court's grant of review, and, thus, is waived.

Further, with respect to Appellants' reliance on *Progressive Northern*, Safe Auto asserts that Appellants quoted its language out of context, and that the Superior Court therein did not suggest that Section 1786(f) implicitly directs the extension of coverage

---

[5] The Pennsylvania Association for Justice filed an *amicus* brief in support of Appellants, presenting arguments identical to those in Appellants' brief.

for all permissive users of an automobile under the owner's insurance policy.[6]  Moreover, Safe Auto maintains that *Progressive Northern* is nonbinding, unpersuasive, and factually distinguishable, and, additionally, that it predates the Superior Court's decision in *Byoung Suk An v. Victoria Fire & Cas. Co.*, 113 A.3d 1283 (Pa. Super. 2015), in which the court upheld a substantially broader exclusion − a "named driver only" exclusion − than the one at issue in this case.

Safe Auto further argues that Appellants, in suggesting that an insurer is required to extend liability coverage to all permissive users of an insured's vehicle, misinterprets Section 1786(f).  According to Safe Auto, Section 1786(f) is simply a "penalty provision," which penalizes vehicle owners for allowing their vehicles to be operated by individuals without coverage.  Safe Auto's Brief at 15.  Indeed, Safe Auto contends that Appellants' suggestion that a vehicle owner's purchase of insurance automatically covers all permissive users of the vehicle, rather than flowing from Section 1786(f), actually conflicts with Section 1786(f), which places responsibility on the vehicle owner to ensure the vehicle is operated only by insured individuals, as well as 75 Pa.C.S. § 1574 ("Permitting unauthorized person to drive"), which provides, in part:

> **(a) General rule.--**No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.

75 Pa.C.S. § 1574(a).  According to Safe Auto, under Appellants' interpretation, "every possible coverage exclusion − even those specifically permitted under the MVFRL such as a named driver exclusion" − would be invalid.  Safe Auto's Brief at 20.

---

[6] Safe Auto emphasizes that, in the sentence in which the selected language appears, the Superior Court "reaffirms that 'the MVFRL continues not to include specific language directing that all permissive users of a vehicle be insured under the owner's [insurance].'" Safe Auto's Brief at 18 (quoting *Progressive Northern*, 898 A.2d at 1119) (emphasis omitted).

Safe Auto posits that invalidating URDEs will "nullify an insured's calculated decision to reject coverage in exchange for reduced premiums−a result directly at odds with the consumer choice objectives of the MVFRL." *Id.* at 16.

Finally, Safe Auto observes that the legislature specifically identified situations in which coverage is required and/or cannot be limited,[7] and suggests that, if it had intended that insurers provide mandatory liability coverage to all drivers of a vehicle, even those who do not fall within the category of "insured," it would have clearly done so.[8]

Initially, we agree with Safe Auto that Appellants' argument that the URDE in the Policy is inconsistent with the "Protection for Others" provision of the Policy has been waived, as it was not raised before the Superior Court, and this Court did not grant review of this issue. *See Commonwealth v. Cash*, 137 A.3d 1262, 1275 (Pa. 2016) (where a defendant raises an objection before the trial court on specific grounds, only those grounds are preserved for appeal); Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

Next, in addition to the fact that Superior Court decisions are not binding on this Court, we are unpersuaded by Appellants' reliance on *Progressive Northern.* In that case, the insured's son was in a motor vehicle accident while he was driving a vehicle loaned to the insured by a car dealership. At issue was which insurance carrier − the carrier of the dealership's loaned vehicle, or the carrier of the insured's personal vehicle − was required to provide liability coverage to the insured, and whether the policies, which

---

[7] Safe Auto cites the following examples: 75 Pa.C.S. §§ 1711 and 1712 (listing various first-party benefits that must be offered), § 1724 (listing non-excludable conditions for first-party benefits), § 1731 (requirements for rejecting stacking of uninsured and underinsured motorist coverage), and § 1734 (requirement for selecting uninsured/underinsured motorist coverage in an amount equal to or less than the limits of liability).

[8] In support of Safe Auto, the Casualty Insurers of America filed an *amicus* brief, and the Pennsylvania Defense Institute and the Philadelphia Association of Defense Counsel filed a joint *amicus* brief, both maintaining that the URDE does not violate Section 1786, or the public policy underlying the MVFRL.

contained "mutually repugnant clauses" concerning priority of coverage, could practically be enforced. *Progressive Northern Ins.*, 898 A.2d at 1119. Unlike the instant case, *Progressive Northern* did not involve a coverage exclusion.

Moreover, to the extent the Superior Court in *Progressive Northern*, in determining whether the insured's son was an "insured" under the dealership's policy, interpreted Section 1786 as requiring insurance coverage for *all permissive users* of a vehicle, we find such interpretation unsustainable. Requiring an insurer to provide coverage for an unlimited number of permissive users, including those who may be operating the vehicle on a regular basis, but whom the insured has neither disclosed nor paid to insure, contravenes the accepted principle that insureds are not entitled to receive *gratis* coverage. Further, such an interpretation would almost certainly result in an increase in the cost of insurance, as insurers would be forced to insure unknown risks.

Finally, we reject Appellants' contention that the URDE violates the terms and provisions of subsections (a) and (f) of Section 1786 by requiring a vehicle owner to identify all regular users,[9] or residents of the owner's household, in order to guarantee that they are covered under an insurance policy. As noted above, Section 1786(a) provides that "[e]very motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility." 75 Pa.C.S. § 1786(a). Section 1786(f) provides that "[a]ny owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter." *Id.* § 1786(f).

---

[9] Although Appellants maintain that the URDE violates Sections 1786(a) and (f) by also requiring a vehicle owner to identify all *occasional users* of a vehicle, the term "occasional user" is contained only in the "Protection for Others" clause of the Policy. Any such claim is inapposite to this case as it is undisputed that Dixon was both a regular user of the vehicle, and a member of Policyholder's household.

Plainly, Section 1786 does not require an owner to identify all permissive users of his vehicle; however, it also does not require an *insurer* to provide coverage beyond what the insurance policy provides. Under its plain language, Section 1786 speaks to the obligations of the vehicle owner, not the insurer. Accordingly, we find that the URDE does not violate the MVFRL.

In their second issue, Appellants argue that the URDE in the Policy is contrary to the underlying public policy of the MVFRL, in that it undermines the Commonwealth's "objective of limiting the number of uninsured motorists on Pennsylvania roadways, a principle intended to protect the safety and security of all individuals traveling on Commonwealth roadways." Appellants' Brief at 21. In response, Safe Auto submits that Appellants are raising "irrelevant issues" as to cost containment in an effort to distract from the primary issue of the validity and enforceability of the URDE. Safe Auto's Brief at 23. Safe Auto further asserts that Appellants mischaracterize *Williams v. GEICO Government Ins. Co.*, 32 A.3d 1195 (Pa. 2011), the principal case upon which they rely.

We reiterate that a party seeking to void an unambiguous provision in an insurance contract on public policy grounds bears a heavy burden, and that a determination of public policy must be based on the law, not simply on general considerations of supposed public interest. *See Williams*, 32 A.3d at 1206. This Court previously has explained the basis for the MVFRL:

> The repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of "maximum feasible restoration" embodied in the now defunct No-Fault Act.

*Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994).

While we have repeatedly recognized the goal of cost containment, we have consistently observed that there is a balance to be struck between that goal and the remedial purpose of the MVFRL. In *Eichelman, supra*, the appellant was injured while driving his motorcycle covered by a policy without UIM coverage. Thereafter, he unsuccessfully sought UIM benefits under a separate policy issued to his parents, with whom he lived. His parents' policy contained a household exclusion, excluding UIM coverage for bodily injury suffered while occupying a motor vehicle not insured for UIM coverage. Appellant sought to have the exclusion declared invalid on the basis of public policy. In upholding the exclusion, we explained:

> [U]nderinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction. As this Court has stated, "there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." *Hall v. Amica Mut. Ins. Co.,* [648 A.2d 755, 761 (Pa. 1994)]. Here, appellant voluntarily chose not to purchase underinsured motorist coverage. In return for this choice, appellant received reduced insurance premiums. . . . Thus, this Court concludes that giving effect to the "household exclusion" in this case furthers the legislative policy behind underinsured motorist coverage in the MVFRL since it will have the effect of holding appellant to his voluntary choice.
>
> Allowing the "household exclusion" language to stand in this case is further bolstered by the intent behind the MVFRL, to stop the spiralling costs of automobile insurance in the Commonwealth. If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members

living at their residence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage. Thus, allowing the "household exclusion" language of the two insurance policies at issue to bar recovery by appellant of underinsured motorist benefits is consistent with the intent behind the enactment of the MVFRL.

711 A.2d at 1010.

Subsequently, in *Burstein v. Prudential Property & Cas. Ins. Co.*, 809 A.3d 204 (Pa. 2002), we upheld a regular use, non-owned car exclusion of UIM coverage as non-violative of public policy, explaining:

In light of the primary public policy concern for the increasing costs of automobile insurance, it is arduous to invalidate an otherwise valid insurance contract exclusion on account of that public policy. This policy concern, however, will not validate any and every coverage exclusion; rather, it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively.

Here, voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure. Most significantly, if this Court were to void the exclusion, insureds would be empowered to regularly drive an infinite number of non-owned vehicles, and receive gratis UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle. The same would be true even if the insureds never disclose any of the regularly used, non-owned vehicles to the insurers, as is the case here. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. Such result is untenable.

*Id.* at 208.

Notwithstanding the above, and specifically citing the concurring opinions of several members of this Court in *Williams,* Appellants suggest that this Court "has

recognized that the remedial goals of the MVFRL are equally important as the oft repeated goals of cost containment." Appellants' Brief at 19. In *Williams*, a police officer was seriously injured during the course of his employment while operating his police vehicle, for which he did not have the ability to obtain UIM coverage. Williams sought to recover UIM benefits from Geico, with whom he maintained a personal automobile insurance policy, which included, *inter alia*, stacked UIM coverage with a limit of $50,000 per person. Geico denied coverage based on a "regular-use" exclusion in the policy, which provided that insurance coverage did not apply when "using a motor vehicle furnished for the regular use of you . . . which is not insured under this policy." *Williams*, 32 A.3d at 1197 (citation omitted).

On appeal from the Superior Court's decision upholding the regular-use exclusion, this Court determined that the regular-use exclusion, as it applied to state troopers and other first responders, did not violate public policy. In so holding, we recounted the "key decisional language" from *Burstein* set forth above, and observed that the "crucial factors" of the case were identical to those underlying *Burstein*, namely:

> an employee injured while driving his employer-owned vehicle attempted to recover UIM benefits from his private insurer without compensating the insurer for that unknown risk. In that regard, we find that Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected. Therefore, we reaffirm *Burstein* and hold that the regular-use exclusion is not void as against public policy.

*Williams*, 32 A.3d at 1206 (citation omitted).

Initially, we emphasize that, as evidenced by the above-quoted language of our prior decisions, this Court has recognized that cost containment was a central goal of the MVFRL. It is true, however, that in our more recent decision in *Williams*, several Justices expressed in separate concurrences their opinion that cost containment should not be

viewed as the predominant goal of the MVFRL. Now-Chief Justice Saylor explained that he would "once and for all abandon the rubric that cost containment was the overarching policy concern of the [MVFRL], since the act clearly retained the core remedial objectives of the prior regulatory scheme." *Williams*, 32 A.3d at 1210 (Saylor, J., concurring). However, Chief Justice Saylor also stated: "Given that there are mixed policy concerns in play, and the Legislature and the regulators have not spoken clearly on this issue, it appears to me that, rightly or wrongly, much latitude has been left to the insurance companies in determining the appropriate degree of portability." *Id.*

In his concurring opinion, Justice Baer "applaud[ed]" those Justices, including Chief Justice Saylor, and then-Justice Orie Melvin, the author of the decision in *Heller*, *supra*,[10] who acknowledged "the limitations of the oft-repeated policy of cost containment." *Id.* at 1210 (Baer, J., concurring). Nonetheless, Justice Baer "agree[d] that any further protection in the form of automobile insurance benefits must come from the legislative branch and not this Court." *Id.* at 1211.

Finally, this author, joined by then-Justice McCaffery, discussed the competing public policy concerns of remedial coverage and cost containment, but concluded that, when there are divergent policy concerns, "it is the General Assembly who must act and not this Court." *Id.* at 1211 (Todd, J., concurring). Thus, while a majority of the members of this Court have indicated that cost containment should not be considered the dominant public policy underlying the MVFRL, it is clear that it remains one of the policy concerns to be considered.

---

[10] In *Heller*, the Court explained:
> While the enactment of the MVFRL grew out of a legislative concern for the "spiraling" costs of automobile insurance, the cost containment objective cannot be mechanically invoked as a justification for every contractual provision that restricts coverage and purportedly lessens the cost of insurance.

32 A.3d at 1222.

In the instant case, the Policy contains a clear and unambiguous URDE, which excludes coverage for injury or property damage that occurred while Policyholder's vehicle was operated by a resident of his household or by a regular user of his covered vehicle, unless that person is listed as an additional driver on the Declarations Page. Although Policyholder did not dispute he was aware of this exclusion, he permitted his vehicle to be operated by his live-in girlfriend, who, under the express terms of the URDE, was not covered by the Policy. Policyholder had the option of adding his girlfriend to the Policy, but chose not to do so. Undoubtedly, this choice resulted in reduced insurance premiums, and, as we previously have stated, an insured is not entitled to receive *gratis* coverage. Moreover, in the absence of provisions in the MVFRL to the contrary, insurers are not compelled to underwrite unknown and uncompensated risks. Thus, we decline to hold that the URDE in this case is contrary to public policy.

For all of the foregoing reasons, we affirm the order of the Superior Court.

Order affirmed.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht files a concurring opinion.